**MANDED** for further proceedings consistent with this Opinion.

William J. LaPOINT and John M. Nehra, in their capacity as Stockholder Representatives, Plaintiffs Below, Appellants,

v.

AMERISOURCEBERGEN CORPORATION, Defendant Below, Appellee.

No. 407, 2008.

Supreme Court of Delaware.

Submitted: Dec. 17, 2008.
Decided: March 12, 2009.
Rehearing Denied April 15, 2009.

Jon E. Abramczyk, Esquire (argued), and John P. DiTomo, Esquire, Morris, Nichols, Arsht & Tunnell, LLP, Wilmington, Delaware, for appellants.

Rolin P. Bissell, Esquire (argued), Elena C. Norman, Esquire, Kathaleen McCormick, Esquire, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, and HOLLAND, Justice, and NOBLE, Vice Chancellor.[1]

HOLLAND, Justice.

The plaintiffs-appellants, William J. LaPoint and John M. Nehra, in their capacity as representatives of the former stockholders of Bridge Medical, Inc. ("Bridge Stockholder Representatives"), filed this appeal from the Superior Court's final judgment in favor of the defendant-appellee, AmerisourceBergen Corporation ("ABC").[2] Bridge Medical, Inc., developed software for hospitals related to patient safety. ABC is a wholesale pharmaceutical distribution company that distributes brand-name and generic drugs to hospitals, retail pharmacies, nursing homes and assisted living centers. On November 5, 2002, Bridge Medical and ABC entered into an Agreement and Plan of Reorganization (the "Merger Agreement") pursuant to which Bridge Medical became a wholly-owned subsidiary of ABC.

On March 19, 2004, former stockholders of Bridge Medical (the "Bridge Stockholders") filed an action in the Court of Chancery and claimed that ABC breached the Merger Agreement (the "Chancery Ac-

---

1. Sitting by designation pursuant to Del. Const. art. IV, § 12, Del.Supr. Ct. R. 2(a) and Del.Supr. Ct. R. 4(a).

2. *LaPoint v. Amerisourcebergen Corp.,* 2008 WL 2955511 (Del.Super.Ct. July 25, 2008).

tion"). After the Court of Chancery entered its final judgment, the Bridge Stockholder Representatives commenced an action in the Superior Court that is the subject of this appeal (the "Superior Court Action"). In the Superior Court Action, the Bridge Stockholder Representatives requested indemnification for attorneys' fees and other litigation costs incurred in connection with the Chancery Action.

ABC moved for summary judgment in the Superior Court Action on two grounds: first, that the Bridge Stockholder Representatives' claim was barred by the doctrine of *res judicata;* and second, that the Bridge Stockholder Representatives' claim was barred separately by the statute of limitations.[3] The Superior Court granted summary judgment in favor of ABC on both grounds.

The Bridge Stockholder Representatives have raised two contentions in this appeal. First, they assert that *res judicata* cannot bar their claim for indemnification because that claim was never litigated or adjudicated in a prior proceeding. In addition, they argue that neither the principles of *res judicata* nor the rule against claim splitting bars their indemnification claim because that claim is a new claim based on new rights and based entirely on facts that were not known, and could not have been known, at the time the first contract disputes between the parties were adjudicated. Second, they assert that the statute of limitations cannot bar a claim for indemnification that was brought within three months of the Court of Chancery's decision that ABC had breached the Merger

Agreement because the indemnification claim did not accrue until there was a final determination that ABC had breached that agreement.

We have concluded that both of those contentions are correct. Therefore, the judgments of the Superior Court must be reversed.

### Procedural Background

On November 20, 2007, the Bridge Stockholder Representatives commenced the Superior Court Action, which is captioned *LaPoint v. AmerisourceBergen Corporation,* Superior Court of Delaware, C.A. No. 07C–11–152, and is the subject of this appeal. The Superior Court Action arose from the Chancery Action, which is captioned *LaPoint v. AmerisourceBergen Corporation,* Delaware Court of Chancery, C.A. No. 327–CC. The Chancery Action was filed on March 19, 2004, and concerned claims by the Bridge stockholders that ABC breached the Merger Agreement under which ABC acquired Bridge Medical from the Bridge Stockholders. The Court of Chancery's final judgment was entered on September 12, 2007.[4]

### Chancery Action

On March 19, 2004, the Bridge Stockholder Representatives filed the Chancery Action on behalf of all the Bridge Stockholders. In the Chancery Action, the Bridge Stockholder Representatives alleged that ABC had breached the terms of the Merger Agreement by, among other things, failing to adequately promote Bridge Medical's products and to properly

---

**3.** ABC also moved in the alternative to have the Superior Court Action transferred to the Court of Chancery pursuant to title 10, section 1902 of the Delaware Code. Del.Code Ann. tit. 10, § 1902. The Superior Court did not decide ABC's motion to transfer, which

became moot upon the Court's granting of summary judgment in ABC's favor.

**4.** *LaPoint v. AmerisourceBergen Corp.,* C.A. No. 327–CC (Del.Ch. Sept. 12, 2007); *LaPoint v. AmerisourceBergen Corp.,* 2007 WL 2565709 (Del.Ch. Sept. 4, 2007).

calculate contractually defined earn-out payments.

In the Chancery Action, the Bridge Stockholder Representatives specifically raised and sought to litigate the issue of their equitable claim for attorneys' fees and costs incurred in that action. At the beginning of the suit, the Bridge Stockholder Representatives alleged in both their complaint and their amended complaint that they were entitled to be reimbursed for attorneys' fees and costs. At the time of trial, the Bridge Stockholder Representatives again indicated that they were pursuing a claim for attorneys' fees, asserting in their Pretrial Brief that:

> [t]he evidence presented at trial will show that Plaintiffs are entitled to damages of not less than $44 million, plus attorneys' fees and costs, and such other relief as the court may deem just and proper.

In the Joint Pretrial Order, the Bridge Stockholder Representatives stated their intent to pursue an equitable claim for attorneys' fees based on ABC's alleged breaches of the Merger Agreement:

> Plaintiffs have incurred substantial litigation costs, including attorneys' fees and expenses, in prosecuting these claims. If ABC had not breached the Merger Agreement, Plaintiffs would not have incurred these fees and expenses. It is fair and *equitable* to include, as part of Plaintiffs' damages, the present and future fees and expenses incurred by Plaintiffs. (emphasis added).

Nevertheless, at trial the Bridge Stockholder Representatives chose not to present any evidence on the equitable attorneys' fees issue. After trial, the Court of Chancery awarded the Bridge Stockholder Representatives $21 million in damages. The Bridge Stockholders did not ask the Court of Chancery to award them attorneys' fees and costs following the award of damages. The Final Order and Judgment, the form of which the Bridge Stockholder Representatives proposed and agreed to, did not award attorneys' fees or costs.

### Indemnification Request Rejected

On September 20, 2007, about a week after the Court of Chancery issued its final judgment on the breach of contract claims, the Bridge Stockholder Representatives sent a letter to ABC requesting indemnification for $4,622,396.10 in attorneys' fees incurred in the Chancery Action. On September 28, 2007, counsel for ABC responded that the claim for attorneys' fees was barred under the doctrines of waiver, because the Bridge Stockholder Representatives had raised the attorneys' fees issue in the Chancery Action but had not pursued it effectively, and *res judicata*, because the Bridge Stockholder Representatives could have brought their attorneys' fees claim under the Merger Agreement as part of the Chancery Action. The Bridge Stockholder Representatives assert that ABC admitted in that letter the following facts:

- [Bridge Medical's] September 20, 2007 letter was the first time that the Stockholder Representatives raised the issue of entitlement to attorneys' fees under the Merger Agreement.
- The First Amended Complaint contained a general demand for attorneys' fees in the prayer for relief, but did not contain a claim for indemnification under the Merger Agreement.
- The Stockholder Representatives did not raise the issue of contractual indemnification at trial. Nor did they raise that issue in their pre-trial or post-trial briefing.

### Chancery Action Judgment Affirmed

On September 27, 2007, ABC appealed the Court of Chancery's award of $21 million of damages under the earn-out provi-

sion of the Merger Agreement.[5] The Bridge Stockholder Representatives did not cross-appeal from any part of the Court of Chancery's decision. On April 8, 2008, this Court affirmed the Court of Chancery's final judgment.[6] On April 11, 2008, ABC satisfied the full amount of the judgment, paying the $21,000,000.06 judgment amount, plus $5,911,887.33 in pre-judgment interest, as well as post-judgment interest at the legal rate.

### Superior Court Action

On November 20, 2007, the Bridge Stockholder Representatives filed the Superior Court Action requesting attorneys' fees. In that action, the Bridge Stockholder Representatives argued, based on the indemnification provisions of the Merger Agreement, that they are entitled to the attorneys' fees and costs incurred in connection with the Chancery Action. The Bridge Stockholder Representatives made this claim under Section 8.2(b) of the Merger Agreement, which states:

(b) *By Parent.* Subject to Section 8.2(f) below, Parent and Merger Sub shall, jointly and severally, *indemnify,* defend and hold harmless the Company Stockholders and their respective officers, directors, employees, Affiliates, agents, successors, subsidiaries and assigns (collectively the *"Stockholder Group"*) from and against any and *all Damages incurred* in connection with, arising out of, resulting from or incident to any *breach* of any covenant, representation, warranty or agreement made by [ABC] in this [Merger] Agreement.

Section 8.2(a) of the Merger Agreement defines Damages to include:

any and all costs, losses, liabilities, damages, lawsuits, deficiencies, claims and expenses, including without limitation,

*reasonable attorneys' fees* and amounts paid in investigation, defense or settlement of any of the foregoing.

On January 3, 2008, ABC answered the Superior Court complaint and moved for summary judgment on the grounds that the indemnification claim for attorneys' fees under the Merger Agreement was barred by the doctrine of *res judicata* and by the applicable three-year statute of limitations because the claim accrued in February 2004, when the Merger Agreement was allegedly breached.

On July 25, 2008, the Superior Court held that the Bridge Stockholders' claim for attorneys' fees under the Merger Agreement was barred by both the doctrine of *res judicata* and the three-year statute of limitations. Applying the transactional theory of *res judicata,* the Superior Court found that *res judicata* barred the attorneys' fees claim for two reasons. First, because "[i]n their Complaint, Amended Complaint, and Pretrial Order, Plaintiffs demanded reimbursement for attorneys' fees and costs," the attorneys' fees indemnification issue had actually been litigated in the Chancery Action. The Superior Court found that "[c]learly, Plaintiffs are seeking in this Court, as they did in the Court of Chancery, the same relief, based upon the same events, simply under a different substantive theory." Second, even if the Bridge Stockholders had not raised their indemnification claim for attorneys' fees under the Merger Agreement in the Chancery Action, the Bridge Stockholders could have raised that issue in the Chancery Action. The Superior Court concluded that, because "the doctrine of *res judicata* precludes [the Bridge Stockholder Representatives] from litigating issues not previously raised but which

---

**5.** *See AmerisourceBergen Corp. v. LaPoint,* No. 518, 2007 (Del.Supr. Sept. 27, 2007).

**6.** *See Amerisourcebergen Corp. v. LaPoint,* 2008 WL 931670 (Del.Supr. Apr. 8, 2008).

could have been raised in the prior [Chancery Action]," *res judicata* would still bar the claim.

The Superior Court also held that the indemnification claim for attorneys' fees was barred by Delaware's three-year statute of limitations for breach of contract claims.[7] The Superior Court found that the breach of the Merger Agreement occurred in February 2004, when the plaintiffs allege the breach of the Merger Agreement first occurred. The Superior Court examined the language of the indemnification provision in the Merger Agreement and determined that the contract language provided that the attorneys' fees claim accrued at the time of the "breach." The Superior Court rejected the Bridge Stockholder Representatives' contention that the indemnification claim for attorneys' fees under the Merger Agreement did not accrue until the Court of Chancery resolved the underlying breach of contract action.

### Standard of Review

■ The entry of summary judgment is appropriate only when the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[8] In an appeal from a trial court's decision to grant summary judgment, this Court's scope of review is *de novo*, not deferential, as to both the facts and the law.[9] On a summary judgment record, which is a paper record not involving credibility assessments, "we are free to draw our own inferences in making factual determinations and in evaluating the legal significance of the evidence."[10] Of course, the facts of record, including any reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party.[11]

### Res Judicata Inapplicable

■ The doctrine of *res judicata* is venerable and well-established in our legal history, having been traced back to Roman law and implemented in English law in the twelfth century.[12] The Bridge Stockholder Representatives' first argument on appeal is that "a [Superior Court] claim based on facts that had not accrued at the time the original [Chancery Action] was filed cannot be barred by *res judicata*." The Bridge Stockholder Representatives submit that until the Court of Chancery "had determined that AmerisourceBergen breached the merger agreement and Amerisource-Bergen subsequently refused to indemnify the plaintiffs, any claim for indemnification was not yet ripe."

■ *Res judicata* exists to provide a definite end to litigation,[13] prevent vexatious litigation,[14] and promote judicial economy.[15] "The procedural 'bar of *res*

7. Del.Code Ann. tit. 10, § 8106.

8. *Williams v. Geier*, 671 A.2d 1368, 1375 (Del. 1996) (citing *Arnold v. Society for Savings Bancorp, Inc.*, 650 A.2d 1270, 1276 (Del. 1994)).

9. *Id.*

10. *Id.* (quoting *Hoechst Celanese Corp. v. Certain Underwriters at Lloyd's, London*, 656 A.2d 1094, 1099 (Del.1995)).

11. *Id.* at 1375–76 (citing *Bershad v. Curtiss–Wright Corp.*, 535 A.2d 840, 844 (Del.1987)).

12. Andrew O. Bunn, Comment, *Shaver v. Woolworth: Enforced Federalization of Pendent Claims*, 42 Rutgers L. Rev. 607, 614–15 (1990).

13. *Maldonado v. Flynn*, 417 A.2d 378, 381 (Del.Ch.1980).

14. *Id.*

15. *Playtex Family Prods., Inc. v. St. Paul Surplus Lines Ins. Co.*, 564 A.2d 681, 683 (Del.Super.Ct.1989).

*judicata* extends to all issues which might have been raised and decided in the first suit as well as to all issues that actually were decided.' " [16] "In essence, the doctrine of *res judicata* serves to prevent a multiplicity of needless litigation of issues by limiting parties to one fair trial of an issue or cause of action which has been raised or should have been raised in a court of competent jurisdiction." [17]

■ This Court recently reiterated the elements of *res judicata* in *Dover Historical Society, Inc. v. City of Dover Planning Commission:* [18]

> *Res judicata* operates to bar a claim where the following five-part test is satisfied: (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.[19]

Applying that test, this Court reversed a decision of the Superior Court to bar an application for attorneys' fees under the doctrine of *res judicata.*[20] This Court held that the Superior Court's ruling was "legally erroneous" because the *res judicata* doctrine "was misapplied to bar a claim for relief that was never adjudicated in the earlier fee proceeding." [21]

The Bridge Stockholder Representatives argue that the same conclusion must be reached in this case because the Superior Court committed legal error by misapplying *res judicata* to bar a claim for relief that was never adjudicated in an earlier proceeding. In support of that assertion, the Bridge Stockholder Representatives rely upon ABC's admissions in its September 28, 2007, letter refusing the request for indemnification. In that letter, ABC said:

● The Stockholder Representatives did not raise the issue of contractual indemnification at trial.

● [Bridge Medical's] September 20, 2007 letter was the first time that the Stockholder Representatives raised the issue of entitlement to attorneys' fees under the Merger Agreement.

The Bridge Stockholder Representatives contend that, with those concessions, there is no factual basis on which the Superior Court could properly find that "all Plaintiffs' claims against ABC for breach of the Merger Agreement were adjudicated in the prior action." The record supports that argument. The record reflects that the Bridge Stockholder Representatives did not raise the indemnification claim in the Court of Chancery. Since the indemnification claim was not "adjudicated" in the prior Chancery Action, we hold the indemnification claim in the Superior Court was not barred by that element of *res judicata.*

---

16. *Cassidy v. Cassidy,* 689 A.2d 1182, 1185 (Del.1997) (quoting *Foltz v. Pullman, Inc.,* 319 A.2d 38, 40 (Del.Super.Ct.1974), *disapproved on other grounds, Messick v. Star Enter.,* 655 A.2d 1209, 1211 (Del.1995)).

17. *Taylor v. Desmond,* 1990 WL 18366, at *2 (Del.Super.Ct. Jan. 25 1990), *aff'd,* 1990 WL 168243 (Del.Supr. Aug. 31, 1990).

18. *Dover Historical Society, Inc. v. City of Dover Planning Commission,* 902 A.2d 1084, 1092 (Del.2006).

19. *Id.* (citing *Bailey v. City of Wilmington,* 766 A.2d 477, 481 (Del.2001)).

20. *Id.*

21. *Id.*

### Transactional Approach

██ ABC argues that under the transactional approach to *res judicata,* whether the attorneys' fee indemnification claim was actually litigated does not matter. The Bridge Stockholder Representatives contend the Superior Court erred in ruling that, even if the indemnification claim was not adjudicated in the prior proceeding, "[a]ll claims incident to the breach of the Merger Agreement ... *could have been decided* in the Court of Chancery action." The Bridge Stockholders submit that the Superior Court reached that incorrect result, in part, by relying upon only the first portion of the Second Circuit's summary of Delaware law on claim preclusion in *AmBase Corp. v. City Investing Co. Liquidating Trust.*[22]

In *Ambase,* the United States Court of Appeals for the Second Circuit recognized that under the Court of Chancery's holding in *Maldonado v. Flynn,*[23] Delaware has adopted the "transactional" approach to claim preclusion.[24] The *AmBase* opinion noted, however, that the broader view of *res judicata* does not operate to bar claims based on facts that were not, and could not have been, known to the plaintiff in the second action at the time of the first action.[25] The court explained that:

if the pleadings framing the issues in the first action would have permitted the raising of the issue sought to be raised in the second action, *and if the facts were known, or could have been known to the plaintiff in the second action at the time of the first action, then the claims in the second action are precluded.*[26]

██ Delaware, like the federal courts,[27] follows a transactional approach to *res judicata.*[28] Determining whether two claims arise from the same transaction requires pragmatic consideration, with the fact finder "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[29] Two claims "derive[d] from a common nucleus of operative fact[s]" arise from the same transaction.[30] As we explained in *Kossol v. Ashton Condominium Association, Inc.,* to assert *res judicata* as a bar to a plaintiff's claim, in addition to showing that the same transaction formed the basis for both the present and former suits, the defendant must show that the plaintiff "neglected or failed to assert claims which in fair-

---

**22.** See *Ambase Corp. v. City Investing Co. Liquidating Trust,* 326 F.3d 63 (2d Cir.2003).

**23.** *Maldonado v. Flynn,* 417 A.2d 378 (Del.Ch. 1980).

**24.** *Ambase Corp. v. City Investing Co. Liquidating Trust,* 326 F.3d at 72–73 (citing *Maldonado v. Flynn,* 417 A.2d at 381–82).

**25.** *Id.* at 73 (citing *Ezzes v. Ackerman,* 234 A.2d 444, 445–46 (Del.1967)).

**26.** *Id.* (quoting *Ezzes v. Ackerman,* 234 A.2d at 445–46 (emphasis added)).

**27.** Andrew O. Bunn, Comment, *Shaver v. Woolworth: Enforced Federalization of Pen-*

*dent Claims,* 42 Rutgers L. Rev. 607, 616–17 (1990).

**28.** *Kossol v. Ashton Condominium Ass'n,* 1994 WL 10861, at *2 (Del.Supr. Jan. 6, 1994); *Maldonado v. Flynn,* 417 A.2d at 381 (citing *Ezzes v. Ackerman,* 234 A.2d at 445–46; *Steigman v. Beery,* 203 A.2d 463, 468 (Del.Ch. 1964)).

**29.** *Restatement (Second) of Judgments* § 24(2) (1982).

**30.** *Maldonado v. Flynn,* 417 A.2d at 383.

ness should have been asserted in the first action."[31]

The Bridge Stockholder Representatives submit that the facts that form the basis of the indemnification claim were not, and could not have been, known to the parties at the time that the plaintiffs brought their claim against ABC for breaching the earn-out provision of the Merger Agreement. Prior to the Court of Chancery's determination that ABC breached the Merger Agreement, neither the Bridge Stockholder Representatives nor ABC knew whether ABC would be found to have breached any of its obligations under the Merger Agreement. Therefore, the Bridge Stockholder Representatives argue that their right to indemnification did not ripen until ABC was judged to be in breach of the Merger Agreement and ABC refused to honor its indemnification obligation.

 Generally, a contract is considered to be a single "transaction" for the purpose of claim preclusion.[32] Contractual rights that are triggered and pursued *after* the initial action is filed, however, are not barred by *res judicata* because a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist."[33] ABC's refusal to indemnify the Bridge Stockholder Representatives after the condition precedent to that right had been satisfied (the Court of Chancery's determination that ABC had breached the agreement) gave rise to a second independent cause of action under the Merger Agreement.

In *Dover Historical Society*, this Court held that the Superior Court had improperly applied the bar of *res judicata* to a second application for attorneys' fees because:

> [t]he second fee application rested entirely upon facts that did not arise until after the first application had been denied, *i.e.*, Mr. Zimmerman's destruction of the two historic buildings. Because those new facts give rise to a quite different legal theory of fee entitlement that was neither presented nor decided in the first fee application, *res judicata* could not operate to bar the appellants' second application. The *res judicata* ruling was, therefore, legally erroneous, because the doctrine was misapplied to bar a claim for relief that was never adjudicated in the earlier fee proceeding.[34]

The same is true here. The Bridge Stockholder Representatives' indemnification claim was based on events that had not yet occurred at the time they brought their first breach of contract claim. The record does not support the Superior Court's conclusion that "there has been no additional conduct by the opposing party and no new, substantive basis upon which Plaintiffs claim to be entitled to relief."

The opposing party's "additional conduct" after the litigation of the Bridge Stockholder Representatives' Chancery

---

**31.** *Kossol v. Ashton Condominium Ass'n*, 1994 WL 10861, at *2 (citing *Coca–Cola Co. v. Pepsi–Cola Co.*, 172 A. 260, 262 (Del.Super.Ct.1934)).

**32.** *Petromanagement Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329, 1336 (10th Cir. 1988).

**33.** *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955);

*see Manning v. City of Auburn*, 953 F.2d 1355, 1358–59 (11th Cir.1992); *Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir.1990); *Singer Co. v. Skil Corp.*, 803 F.2d 336, 342–43 (7th Cir.1986).

**34.** *Dover Historical Society, Inc. v. City of Dover Planning Commission*, 902 A.2d at 1092.

Action against ABC for breaching the earn-out provision was ABC's subsequent refusal to honor its indemnification obligation. That obligation did not ripen until a final adjudication of its breach of the earn-out provision in the Merger Agreement. The final adjudication provided the "new substantive basis upon which Plaintiffs claim[ed] to be entitled to relief." ABC's refusal happened after the Bridge Stockholder Representatives initiated the previous breach of contract claims and provided the necessary predicate for the new substantive basis upon which the plaintiffs brought their indemnification claim.

The record reflects that the events necessary to support an indemnification claim had not occurred before the conclusion of the proceedings in the Chancery Action. Those facts were not, and could not have been, known to the plaintiffs in the second action at the time of the first action.[35] Under Section 8.2(b) of the Merger Agreement, until ABC was adjudicated to have "breach[ed] any covenant, representation, warranty or agreement," ABC was not required to indemnify the Bridge Stockholder Representatives for their attorneys' fees.

The Bridge Stockholders' indemnification claim was not ripe until the Court of Chancery adjudicated ABC's breach. The Superior Court erred in finding that "[a]ll claims incident to the breach of the Merger Agreement . . . *could have been* decided in the Chancery Court action," and therefore improperly barred the indemnification claim by *res judicata*. Under the holdings in *Ezzes v. Ackerman* and *Maldonado*, the indemnification claim that arose after a

finding that ABC breached the Merger Agreement was not part of the same "transaction." Therefore, the indemnification claim is not barred under Delaware's transactional approach to *res judicata*.

### Kossol Distinguished

The Superior Court's reliance on the *Kossol* case does not support its conclusion to the contrary. In *Kossol*, the plaintiff pled a claim for attorneys' fees in his original action, withdrew that claim, then attempted to plead the same claim a year later in a second proceeding.[36] This Court applied the *res judicata* test set forth in *Maldonado* and *Ezzes* to bar the *Kossol* plaintiff's claim for attorneys' fees because it was the same claim that the plaintiff had brought, then abandoned, in the original proceeding.[37]

In this case, however, the first time that the Bridge Stockholder Representatives pled their indemnification claim was *after* the Court of Chancery decided ABC breached the Merger Agreement and ABC wrongfully refused the demand for indemnification. The indemnification claim was not brought, then dropped, from an earlier action. Moreover, in *Kossol*, the claim for legal fees was "part of the same transaction underlying the first action" because it was ripe when the first claim was brought.[38]

In *Kossol*, the contract provided that "[i]n the event that the Council shall effectuate the collection of said [common] charges by resort to counsel, the Council may add to the aforementioned charge or

---

**35.** *See Ezzes v. Ackerman*, 234 A.2d at 445–46 (citing *Auerbach v. Cities Service Co.*, 134 A.2d 846, 851 (Del. 1957)).

**36.** *Kossol v. Ashton Condominium Ass'n*, 1994 WL 10861, at * 1.

**37.** *Id.*, at *3.

**38.** *Id.*

charges reasonable attorney[s'] fees." [39] In *Kossol*, the fee provision was not an indemnification right that was conditioned on the finding of a breach. Instead, the right to attorneys' fees at issue in *Kossol* ripened upon the Condominium Council's resort to the use of legal counsel to collect the condo fees.

In this case, the Superior Court correctly noted that *"res judicata* precludes a plaintiff from splitting its claim and seeking the same relief in subsequent litigation under a different substantive theory." This is not such a case, however. The Bridge Stockholder Representatives did not seek to re-litigate an issue that had been decided in an earlier proceeding. The Bridge Stockholder Representatives' claim for ABC's breach of its indemnification obligation was not ripe at the time that the breach of contract claim was brought in the Court of Chancery, and the indemnification claim was not raised or decided in the prior Chancery Action. The indemnification claim was not "split" from the first proceeding because it did not exist at the time that the lawsuit for the earlier breaches to the Merger Agreement was brought and litigated.

### *Molex Persuasive*

The Bridge Stockholder Representatives' claim for indemnification did not ripen until they established that ABC breached the Merger Agreement, demanded indemnification for attorneys' fees from ABC and learned that ABC refused to honor its obligation to indemnify. In *Mo-*

*lex Inc. v. Wyler,* Molex entered a stock purchase agreement in 1998 with Silent Systems, Inc., a privately held Massachusetts corporation, and Gregory T. Wyler, Silent's majority shareholder.[40] Molex agreed to purchase all outstanding and issued shares of Silent.[41] Wyler and Silent represented and warranted that the Purchase Agreement disclosed the identities of all stockholders who owned capital stock in Silent.[42] Wyler also agreed to indemnify and defend Molex for any losses or expenses related to any claim made by persons who claimed a right to Silent's stock but had not been disclosed in the Purchase Agreement.[43]

After Molex purchased the shares in 2000, it learned that Wyler's father claimed to be a co-owner of the Silent shares that had been sold to Molex.[44] In 2001, Wyler's father sued Molex, Silent and Wyler in Massachusetts for rescission of the stock purchase transaction.[45] Molex made several demands to Wyler for indemnification for the costs incurred to litigate the Massachusetts action but Wyler never indemnified Molex.[46]

In 2004, Molex sued Wyler in the United States District Court for the Northern District of Illinois seeking a declaratory judgment that the purchase agreement obligated Wyler to defend and indemnify Molex in the on going Massachusetts action.[47] The parties disagreed as to whether Wyler was obligated to pay Molex's defense costs in the Massachusetts litigation and to indemnify Molex for any liability it might

---

39. *Id.,* at *4 n. 3.

40. *Molex Inc. v. Wyler,* 334 F.Supp.2d 1083, 1085 (N.D.Ill.2004).

41. *Id.*

42. *Id.*

43. *Id.*

44. *Id.*

45. *Id.*

46. *Id.*

47. *Id.*

eventually sustain in that action.[48] In *Molex*, the court explained that a duty-to-defend claim is ripe during the pendency of the underlying action because the duty to defend does not depend on the outcome of the underlying action.[49] Therefore, the question of whether a duty to defend exists can be resolved before the underlying litigation is resolved.[50] Further, a "[d]efense may be required even if there never turns out to be any liability to indemnify."[51]

In contrast, while the underlying action is pending, the issue of whether Wyler had a duty to indemnify Molex for any eventual losses Molex might suffer in the Massachusetts litigation is not yet ripe.[52] The *Molex* court explained: "As a general rule, 'decisions about indemnity should be postponed until the underlying liability has been established'" because a declaration as to the duty to indemnify "may have no real-world impact if no liability arises in the underlying litigation."[53] Although the rule is a general one and not absolute, the general rule applied in the *Molex* case because the court wanted to avoid issuing a declaratory judgment in Molex's favor on the indemnification issue only to have it become irrelevant if Wyler's father lost on all of his claims.[54] The *Molex* court denied the request for a declaratory judgment as to Wyler's duty to indemnify, even though it would have been more convenient to resolve the duty to defend and duty to indemnify questions simultaneously, because "convenience concerns cannot trump Article III's ripeness requirement."[55]

In this case, ABC's duty to indemnify the Bridge Stockholder Representatives did not arise until the Court of Chancery determined that ABC had breached the Merger Agreement. After the Chancery Action determined ABC's liability, ABC had a duty to indemnify, which it breached when it refused the Bridge Stockholder Representatives' request for indemnification. At that point, the Bridge Stockholder Representatives had a claim for breach of the indemnification provision in the Merger Agreement.

### Indemnification Claim Timely Filed

 The parties agree that the question of when a claim for contractual indemnification accrues depends on the contractual language. The parties' disagreement, therefore, pertains solely to the meaning of the contractual language in the Merger Agreement as it relates to accrual. The Merger Agreement unambiguously provides that ABC is required to indemnify the Bridge Stockholder Representatives for attorneys' fees and expenses "resulting from or incident to any breach of any covenant, representation, warranty or agreement made by [ABC] in [the Merger] Agreement." We have explained why that language can only be construed as requiring a finding of a breach before the indemnification obligation ripens.

 In a contract such as the Merger Agreement, in which one party agrees to indemnify the other for damages, including attorneys' fees, arising from that party's breach of the contract, the term

---

48. *Id.* at 1086.

49. *Id.*

50. *Id.*

51. *Id.* (quoting *Lear Corp. v. Johnson Elec. Holdings Ltd.,* 353 F.3d 580, 583 (7th Cir. 2003)).

52. *Id.* at 1087.

53. *Id.* (quoting *Lear Corp. v. Johnson Elec. Holdings Ltd.,* 353 F.3d at 583).

54. *Id.* at 1087–88.

55. *Id.* at 1088.

"indemnity" has a distinct legal meaning that permits the party seeking indemnification to bring a separate cause of action for indemnification after first bringing a successful action for breach of the contract.[56] Indemnification claims do not accrue until the underlying claim is finally decided. In *Scharf v. Edgcomb Corp.*,[57] this Court held that "[a] cause of action for indemnification accrues when the officer or director entitled to indemnification can 'be confident any claim against him ... has been resolved with certainty.'"[58] As this Court explained:

> Generally, the matter on which the claim for indemnification is premised may be said to have been resolved with certainty only when the underlying investigation or litigation is definitively resolved.

> The implicit rationale for this conclusion is that the person seeking indemnity should not have to rush in at the first possible moment but rather should be able to wait until the outcome of the underlying matter is certain.

> A successful result on a claim ... in the trial court, for example, does not cause the statute of limitations to begin running if an appeal is taken. Until the final judgment of the trial court withstands appellate review, the outcome of the underlying matter is not certain.[59]

In this case, the stockholders' claim for indemnification did not accrue before the Court of Chancery made its determination that ABC had breached the Merger Agreement and did not fully ripen until ABC refused to honor its commitment to indemnify the Bridge Stockholder Representatives for the fees incurred in the prior litigation. The Court of Chancery's determination was the earliest date on which the outcome of the underlying matter could have been "resolved with certainty."[60] Because ABC decided to appeal the Court of Chancery's decision, however, the statute of limitations on the indemnification claim did not begin to run until the appeal was resolved on April 8, 2008.[61] Therefore, we hold that the Bridge Stockholder Representatives' claim for indemnification was timely filed in the Superior Court.

### Conclusion

The judgments of the Superior Court are reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

**56.** *But see Weichert Co. of Penn. v. Young,* 2007 WL 4372823, at *6–7 (Del.Ch. Dec. 7, 2007) (awarding reasonable attorneys' fees and costs, in an amount to be determined, pursuant to contractual indemnification provision, where plaintiff separately raised and argued as part of the action for breach of the underlying contract that it was entitled to be indemnified for the fees it incurred in bringing that underlying action).

**57.** *Scharf v. Edgcomb Corp.,* 864 A.2d 909, 919 (Del.2004) (quoting *Scharf v. Edgcomb Corp.*, 1997 WL 762656, at *4 (Del.Ch. Dec. 4, 1997)).

**58.** *Id.*

**59.** *Id.* (quoting *Simon v. Navellier Series Fund,* 2000 WL 1597890, at *9 (Del.Ch. Oct. 19, 2000)).

**60.** *Scharf v. Edgcomb Corp.,* 864 A.2d at 919 (quoting *Scharf v. Edgcomb Corp.*, 2004 WL 718923, at *7 (Del.Ch. Mar. 24, 2004)).

**61.** *Id.* at 919–20.