**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| LGM HOLDINGS, LLC and LGM SUBSIDIARY HOLDINGS, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GIDEON SCHURDER, MENDY SCHURDER, LEAH CHITRIK, and IBS PHARMA, INC., | ) ) ) ) | C.A. No. N23C-09-011 EMD CCLD |
| Defendants. | ) ) ) | |

Submitted: April 1, 2024
Decided: July 10, 2024

*Upon Defendants Mendy Schurder, Leah Chitrik, and IBS Pharma, Inc.'s Motion to Dismiss*
**GRANTED**

*Upon Defendant Gideon Schurder's Motion to Dismiss*
**GRANTED**

Thomas E. Hanson, Jr., Esquire, Barnes & Thornburg LLP, Wilmington, Delaware, Eric Sussman, Esquire, Denise Lazar, Esquire, Barnes & Thornburg LLP, Chicago, Illinois. *Attorneys for Plaintiffs LGM Holdings, LLC and LGM Subsidiary Holdings, LLC*.

John M. Seaman, Esquire, Florentina D. Field, Esquire, Abrams & Bayliss LLP, Wilmington, Delaware. *Attorneys for Defendants Mendy Schurder, Leah Chitrik, and IBS Pharma, Inc.*

Travis S. Hunter, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, Michael J. Payne, Esquire, Frankel, Rubin, Klein, Payne & Pudlowski, P.C., St. Louis, Missouri. *Attorneys for Defendant Gideon Schurder*.

**DAVIS, J.**

## I. INTRODUCTION

This is a contractual fraud and indemnity action brought in the Complex Commercial Litigation Division of the Court. Plaintiffs LGM Holdings, LLC ("LGM Holdings") and LGM Subsidiary Holdings, LLC ("LGM Subsidiary" and, together with LGM Holdings, "Buyers") contend they were defrauded into overpaying for a pharmaceutical business that had not

complied with applicable laws. Buyers also allege they are entitled to indemnification for the costs associated with the government's ensuing investigations and enforcement actions.

Buyers bring their claims against Defendants Gideon Schurder,[1] Mendy Schurder, Leah Chitrik, and IBS Pharma, Inc. ("IBS," and together with Gideon, Mendy, and Ms. Chitrik, "Sellers"). Mendy, Ms. Chitrik, and IBS (together, the "IBS Defendants") jointly moved to dismiss Buyers' Complaint (the "IBS Motion"). Gideon separately moved for the same relief ("Gideon's Motion" and, together with the IBS Motion, the "Motions").

For the reasons stated below, the Motions are **GRANTED**.

## II.     RELEVANT FACTS[2]

### A.  THE PARTIES

LGM Holdings and LGM Subsidiary are both Delaware limited liability companies.[3] Defendants Gideon, Mendy, and Ms. Chitrik are each individuals.[4] Mendy and Ms. Chitrik reside in Florida, and Gideon resides in Israel.[5] Defendant IBS is a Delaware corporation.[6]

### B.  THE PURCHASE AGREEMENT

Sellers owned three pharmaceutical companies (the "Target Companies"), including LGM Pharma, LLC ("LGM").[7] The Target Companies "sourced and distributed active pharmaceutical ingredients ('APIs') from manufacturers and suppliers around the world."[8] Buyers agreed to purchase the Target Companies from Sellers in September 2017.[9] The parties

---

[1] Because Defendants Gideon Schurder and Mendy Schurder share a surname, this opinion refers to them by their first names for the sake of clarity. No disrespect or familiarity is meant by this.
[2] The following facts are derived from the well-pled allegations in the Complaint. D.I. No. 1 ("Compl."). These allegations are presumed to be true solely for purposes of this opinion.
[3] *Id.* ¶¶ 7-8.
[4] *Id.* ¶¶ 9-11.
[5] *Id.*
[6] *Id.* ¶ 12.
[7] *Id.* ¶ 16.
[8] *Id.* ¶ 1.
[9] *Id.* ¶ 16.

2

entered into a purchase agreement (the "Purchase Agreement") and closed the acquisition on

November 15, 2017.[10]

Sellers made three representations in the Purchase Agreement that are at issue in this civil

proceeding. Those representations are contained in Purchase Agreement Sections 4.20, 4.21, and

4.30. [11] The details of those representations are inessential to the resolution of the Motions. To

summarize: Section 4.20 represents that the Target Companies were in material compliance with

all applicable laws and had been for the last seven years;[12] Section 4.21 is similar but specifically

pertains to "Health Care Laws";[13] and Section 4.30 represents that Sellers' representations and

disclosures were complete and accurate.[14]

Buyers' claims also implicate the indemnification provisions found in Purchase

Agreement Article XII. Purchase Agreement Section 12.1(b)(ii) contains the relevant language,

providing in pertinent part:

> Subject to the limitations set forth herein, the Selling Parties shall indemnify,
> protect, defend and hold and save the Buyer Parties harmless, from and against the
> entirety of any Losses any of the Buyer Parties may suffer, sustain or become
> subject to, including in connection with any charges, complaints, actions, suits,
> proceedings, hearings, investigations, claims, demands, judgments, orders, decrees,
> stipulations, injunctions,  through and after the date of the claim for
> indemnification, including without limitation any Losses any of the Buyer Parties
> may suffer, sustain, or become subject to, after the end of the applicable Survival
> Period (if applicable) *if a claim is made, specifying the factual basis in reasonable
> detail before the end of such Survival Period*, resulting from, arising from or out of,
> or caused by:  (A) any breach or inaccuracy of any representation or warranty set
> forth in <u>Article IV</u> of this Agreement[15]

---

[10] *Id.* ¶ 18.
[11] *See* Compl., Ex. 1 ( "Purchase Agreement").
[12] *Id.* § 4.20
[13] *Id.* § 4.21.
[14] *Id.* § 4.30.
[15] *Id.* § 12.1(b)(ii) (first emphasis added).

Two survival periods arguably apply here. One is Section 12.1(a)(iii), which provides in pertinent part:

> All of the representations and warranties that constitute Health Care Representations shall survive the Closing, and shall continue in full force and effect until . . . sixty (60) months thereafter, . . . after which period such representations and warranties shall terminate and have no further force or effect[.][16]

The second at-issue survival period is contained in Section 12.1(a)(viii) and states:

> Notwithstanding anything in this Section 12.1(a) to the contrary, in the event that any breach of any representation or warranty by any of the Sellers constitutes actual or constructive fraud, willful misconduct, or intentional misrepresentation, such representation or warranty shall survive the consummation of the transactions contemplated in this Agreement and continue in full force and effect without any time or other limitation with respect to such breach.[17]

The Purchase Agreement places other limits on indemnity that are less relevant to this opinion, such as a defined cap and basket.[18] Those limitations, like the survival periods in Section 12.1(a), do not apply to "any claims relating to fraud, intention misrepresentation, or willful misconduct of the Selling Parties."[19]

## C. THE GOVERNMENTAL PROCEEDINGS

After closing, Gideon and Mendy became LGM's Commercial Director and Chief Operating Officer, respectively.[20] The United Stats Food and Drug Administration ("FDA") inspected LGM's facility in Kentucky about one year after the Purchase Agreement closed.[21] The FDA found mislabeled shipments of chemicals.[22] The Complaint alleges that Gideon lied to the FDA during the inspection process.[23] At the conclusion of their inspection, the FDA issued a

---

[16] *Id.* § 12.1(a)(iii).
[17] *Id.* § 12.1(a)(viii).
[18] *See, e.g.*, *id.* § 12.2.
[19] *Id.* § 12.2(a)(ii).
[20] Compl. ¶ 35.
[21] *Id.* ¶ 36.
[22] *Id.*
[23] *Id.* ¶¶ 37-39.

4

Form 483—a document that informs companies of concerns raised during an inspection (the "Form 483").[24] The Form 483 listed eleven concerns, which primarily related to the improper labeling of APIs, quality control deficiencies, and inadequate internal controls.[25]

LGM conducted an internal investigation in response to the Form 483, which uncovered Gideon's role in the mislabeling of products and his attempts to deceive the FDA.[26] LGM removed Gideon from his position and turned the investigation's results over to the FDA.[27] Buyers—who controlled LGM at this point—tried to remedy the issues indicated in the Form 483;[28] however, the Form 483 had attracted the attention of other government agencies. Specifically, the United States Department of Justice subpoenaed LGM and New Harbor Capital Management, LLC—an investment firm that "made the majority equity investment in the Target Companies through Buyer[s]."[29]

Buyers' preparations to respond to the subpoenas purportedly uncovered a variety of pre-closing misconduct by Gideon and Mendy.[30] Buyers allege that Sellers unlawfully:

> (1) shipped mislabeled API to the U.S., Israel, and Switzerland, (2) returned API to manufacturers with an incorrect product name, (3) registered manufacturers with the FDA without their knowledge or consent, (4) registered intermediaries rather than the manufacturers, (5) failed to declare the full value of API shipments, and (6) purchased API that the manufacturers specifically instructed suppliers should not be sold in the U.S.[31]

---

[24] *Id.* ¶¶ 40-43.
[25] *Id.* ¶ 46; *see also* Compl., Ex. 4.
[26] Compl. ¶¶ 47-54.
[27] *Id.* ¶¶ 55-60.
[28] *Id.* ¶¶ 59, 61.
[29] *Id.* ¶¶ 62-65.
[30] *Id.* ¶¶ 68-69.
[31] *Id.* ¶ 71.

The Complaint elaborates on each of those allegations with specific facts and includes depictions of supporting evidence such as emails and invoices.[32]  The Court finds those details are not relevant to the decision here.

### D.  THE LETTER AGREEMENT

Buyers terminated Mendy "[a]fter learning the extent of Gideon and Mendy's misconduct."[33]  LGM Holdings, LGM, IBS, Gideon,  and Mendy then sought to resolve their differences, so they entered a letter agreement in July 2020 (the "Letter Agreement").[34]  The Letter Agreement explained that "[Gideon, Mendy, and IBS] and [LGM and LGM Holdings] desire to set forth certain mutual understandings and agreements in relation to the relative rights and obligations of the Parties in the Purchase Agreement and related transaction documents in respect of the Governmental Proceedings and ITA Proceeding."[35]  The Letter Agreement defined the "Governmental Proceedings" to include the Form 483, the subpoena issued to LGM, and related government actions.[36]  The "ITA Proceeding" refers to an audit by the Israeli Tax Authority.[37]

Most of the Letter Agreement's provisions do not impact this dispute, but Letter Agreement Section 4(a) does.  Section 4(a) states:

> In the event Parent, Subsidiary Holdings, LGM (or one of its Affiliates (other than the Sellers)) elects to seek indemnification from the Sellers pursuant to Article XII of the Purchase Agreement in respect of Losses attributable to (y) one or more of the Governmental Proceedings or (z) any matter set forth on Schedule 12.1(b) of the Purchase Agreement, LGM agrees that it and any other Buyer Party that seeks indemnification thereunder shall be subject to an aggregate indemnification cap of Six Million Dollars ($6,000,000); *provided*, that, in the case of (y), LGM agrees, and shall cause each Buyer Party to, seek indemnification therefor solely pursuant

---

[32] *Id.* ¶¶ 75-130.
[33] *Id.* ¶ 131.
[34] *Id.* ¶ 132; Compl., Ex. 26 ("Letter Agreement").
[35] Letter Agreement at Recitals.
[36] *Id.*
[37] *Id.*

to Section 12.1(b)(ii)(A) of the Purchase Agreement in respect of a breach of one or more Health Care Representations (i.e., applying an aggregate cap of Six Million Dollars ($6,000,000) as set forth in Section 12.2(a)(iii));[sic] provided; further, that, in respect of (y) and (z) above, the Basket shall not apply. For the avoidance of doubt, the above $6,000,000 cap will apply to any and all claims made by the aforementioned regarding (y) and/or (z) above, and *no claim with respect to (y) or (z) above shall include a claim regarding fraud, intentional misrepresentation, or willful misconduct of the Selling Parties*[.][38]

### E.  THIS LITIGATION

Buyers demanded indemnification from Sellers for the losses due to the government investigations on November 8, 2022.[39]  The indemnity notice "stated that all of the legal and investigatory fees were attributable to Sellers' breach of representations and warranties set forth in the Purchase Agreement."[40]  Sellers denied Buyers' demand on December 1, 2022.[41]  Buyers filed this action on September 1, 2023.[42]  The Complaint asserts five Counts: three claims of fraudulent inducement, one for each allegedly false representation (Counts I, II, and III);[43] a claim for indemnification (Count IV);[44] and a claim requesting a declaratory judgment, which is based upon the same alleged fraud and right to indemnity as the other Counts (Count V).[45]

Mendy, Ms. Chitrik, and IBS filed the IBS Motion on November 17, 2023.[46]  Sellers opposed the IBS Motion on December 20, 2023.[47]  Gideon filed his Motion on January 8, 2024.[48]  The IBS Defendants filed their reply brief two days later.[49]  Sellers filed a brief opposing Gideon's Motion, which also included responses to the IBS Defendants' reply brief, on

---

[38] *Id.* § 4(a) (second emphasis added).
[39] Compl. ¶ 138.
[40] *Id.* ¶ 140.
[41] *Id.* ¶ 142.
[42] *See* Compl.
[43] *Id.* ¶¶ 143-72.
[44] *Id.* ¶¶ 173-77.
[45] *Id.* ¶¶ 178-89.
[46] *See* D.I. No. 16 ("IBS Defs.' Mot.").
[47] *See* D.I. No. 19 ("Pls.' Opp'n to IBS Defs.").
[48] *See* D.I. No. 22 ("Gideon's Mot.").
[49] *See* D.I. No. 24 ("IBS Defs.' Reply").

February 7, 2024.[50]  Gideon filed his reply brief on February 22, 2024.[51]  The Court permitted the IBS Defendants to file a sur-reply on March 11, 2024 so they could respond to the IBS Motion-related contentions included in Buyers' opposition to Gideon's Motion.[52]  The Court then heard argument on April 1, 2024.[53]  After hearing argument, the Court took the Motions under advisement.

### III. PARTIES' CONTENTIONS

#### A. MOTIONS

The arguments raised in the two Motions are predominantly the same.  Sellers first argue that Buyers waived their fraud claims in the Letter Agreement because those claims relate to the Governmental Proceedings.[54]  Sellers also maintain that Buyers' fraud claims are untimely because the presumptive three-year statute of limitations expired in July 2023.[55]  Sellers next contend that Buyers waived their indemnity claim in the Letter Agreement because it is grounded upon alleged fraud.[56]  Sellers add that Buyers' request for a declaratory judgment is impermissibly redundant.[57]

The IBS Defendants include two additional arguments.  The first unilateral contention is that Buyers' indemnification claim is time-barred because it accrued in September 2018[58] and Buyers did not bring suit until September 2023.[59]  The second unilateral contention is that the

---

[50] *See* D.I. No. 25 ("Pls.' Opp'n to Gideon").
[51] *See* D.I. No. 28 ("Gideon's Reply").
[52] *See* D.I. No. 29 ("IBS Defs.' Sur-reply").
[53] D.I. No. 31.
[54] IBS Defs.' Mot. at 15-17; Gideon's Mot. at 13-19.
[55] IBS Defs.' Mot. at 17-19; Gideon's Mot. at 20-25.
[56] IBS Defs.' Mot. at 15-17; Gideon's Mot. at 26-27.
[57] IBS Defs.' Mot. at 21-24; Gideon's Mot. at 28.
[58] Context suggests this date references when the FDA began its inspection of the LGM facility.  *See* Compl. ¶ 36.
[59] IBS Defs.' Mot. at 20-21.

Complaint's allegations do not raise a reasonable inference that Ms. Chitrik or IBS knew the representations were false, defeating an element of fraud.[60]

## B. OPPOSITION

Buyers have agreed to withdraw their declaratory judgment request,[61] but they defend the rest of their Complaint. Buyers first argue that the fraud claims were not waived by the Letter Agreement because they are not related to the Governmental Proceedings.[62] Buyers continue that they did not waive their indemnity claim because its factual connection to knowingly false representations does not convert it into a fraud claim.[63] Buyers maintain that the fraud claims are timely because the parties contractually agreed to an indefinite limitations period pursuant to 10 *Del. C.* § 8106(c), invoking the statutory maximum twenty-year limitations period.[64] Buyers argue that the Complaint is adequately pled as to Ms. Chitrik and IBS because those two are included in "Sellers" and the Complaint contains allegations about "Sellers'" knowledge.[65]

Regarding the timeliness of the indemnity claim—which only the IBS Defendants challenged—Buyers initially responded that the relevant survival period created a five-year statute of limitations that started to run sometime in 2020.[66] Buyers, however, take different positions in their response to Gideon's Motions. First, Buyers switched to arguing that their indemnity claim did not accrue until Sellers rejected the indemnity demand in December 2022, making their September 2023 Complaint timely.[67] Buyers also added a suggestion that Sellers' purported fraud tolled the limitations period with respect to their indemnity claim.[68]

---

[60] *Id.* at 21.
[61] Pls.' Opp'n to IBS Defs. at 23.
[62] *Id.* at 13-15; Pls.' Opp'n to Gideon at 13-17.
[63] Pls.' Opp'n to IBS Defs. at 16; Pls.' Opp'n to Gideon at 24-25.
[64] Pls.' Opp'n to IBS Defs. at 17-19; Pls.' Opp'n to Gideon at 17-20.
[65] Pls.' Opp'n to IBS Defs. at 20-22.
[66] *Id.* at 19-20.
[67] Pls.' Opp'n to Gideon at 21-24.
[68] *Id.*

## IV. STANDARD OF REVIEW

Upon a motion to dismiss under Superior Court Civil Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[69] The Court does not, however, accept "conclusory allegations that lack specific supporting factual allegations."[70] "The timeliness of claims may be determined on a motion to dismiss if the facts pled in the complaint, and the documents incorporated within the complaint, demonstrate that the claims are untimely."[71]

## V. DISCUSSION

Of the arguments raised by Sellers, two are dispositive. Counts I, II, and III must be dismissed because Buyers waived their fraud claims in the Letter Agreement. Count IV must be dismissed because Buyers did not bring their indemnity claim within the applicable survival period. And Buyers have agreed to withdraw the declaratory judgment claim in Count V. The Court therefore limits its discussion to the issues of waiver and the survival period.

### A. BUYERS WAIVED THEIR FRAUD CLAIMS IN THE LETTER AGREEMENT.

Buyers agreed in the Letter Agreement that "no claim with respect to [one or more of the Governmental Proceedings] . . . shall include a claim regarding fraud, intentional

---

[69] *See ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023).

[70] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[71] *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *6 (Del. Ch. Jan. 24, 2005) (footnotes and citations omitted).

misrepresentation, or willful misconduct of the Selling Parties."[72]  Accordingly, because Buyers'

fraudulent inducement claims relate to the Governmental Proceedings, those claims were waived

in the Letter Agreement.

The phrase "with respect to" connotes relatedness and is typically construed broadly.[73]  In

*Centene*, the Court of Chancery interpreted the term "regarding" in the context of a forum

selection clause and noted that "with respect to; concerning" was an accepted definition.[74]  The

court listed definitions of similar terms and concluded, "[t]he aforementioned authorities support

a broad reading of the Forum Selection Clause."[75]  Like the plaintiffs in *Centene*,[76] Buyers do not

argue that "with respect to" should be read narrowly.  Instead, Buyers argue the fraud claims are

"unrelated to the Governmental Proceedings."[77]  Buyers' allegations do not support that

contention.

Buyers seek "indemnity for expenses of up to $6 million associated with the below

described investigations by FDA and DOJ that Buyer[s] ha[ve] incurred *as a result of Sellers'*

*fraud.*"[78]  Moreover, Buyers "stated [in their indemnity notice] that *all of the legal and*

*investigatory fees were attributable to Sellers' breach of representations and warranties set forth*

*in the Purchase Agreement.*"[79]  The Complaint reiterates that the conduct that supports the fraud

---

[72] Letter Agreement § 4(a).  Buyers attempt to narrow the scope of the waiver by claiming it only waives claims with respect to "'Losses attributable' to Governmental Proceedings."  *See* Pls.'s Opp'n to Gideon at 17.  But that misconstrues Section 4(a).  The "Losses attributable" language describes for what Buyers could be indemnified.  *See* Letter Agreement § 4(a).  The letter "(y)" is defined to mean, "one or more of the Governmental Proceedings."  *Id.* And the actual text of the waiver clause reads, "no claim with respect to (y) or (z) shall include a claim regarding fraud[.]"  *Id.*  Accordingly, the phrase "Losses attributable to" is not included in the waiver clause.

[73] *See Centene Corp. v. Accellion, Inc.*, 2022 WL 898206, at *7 (Del. Ch. Mar. 28, 2022).

[74] *Id.* (quoting *Merriam-Webster's Collegiate Dictionary* (11th ed. 2014)).

[75] *Id.* (collecting cases).

[76] *Id.*

[77] Pls.' Opp'n to IBS Defs. at 14; *see also* Pls.' Opp'n to Gideon at 14 (claiming "the Governmental Proceedings have nothing to do with the false and misleading statements that Sellers made to induce Buyer[s] to purchase the Target Companies").

[78] Compl. ¶ 3.

[79] *Id.* ¶ 140.

claims is also what led to Buyers' "significant legal and investigatory fees."[80] The Complaint and the attached exhibits also reveal that the Governmental Proceedings investigated pre-closing conduct, further demonstrating that there is no clean break between the actions that led to the Governmental Proceedings and the actions that allegedly made the Purchase Agreement fraudulent.[81]

In all, the Court does not agree that Buyers' fraud claims are "unrelated" to the Governmental Proceedings. The Governmental Proceedings pertain to an alleged pattern of wrongdoing that began before the Purchase Agreement closed and continued thereafter—a pattern that includes the misdeeds underlying Buyers' fraud allegations. There may not be perfect identity between the actions implicated in Governmental Proceedings and the actions that allegedly made the challenged representations fraudulent; but there is sufficient overlap that Buyers' fraud claims are still claims "with respect to [one or more of the Governmental Proceedings]." Therefore, Buyers waived these fraudulent inducement claims in Section 4(a) of the Letter Agreement, so Counts I, II, and III must be dismissed.

## B. BUYERS DID NOT BRING THEIR INDEMNITY CLAIM WITHIN THE APPLICABLE SURVIVAL PERIOD.

Although Letter Agreement Section 4(a) waives fraud claims related to the Governmental Proceedings, it also clarifies Buyers' indemnity rights with respect to the Governmental Proceedings.[82] Pertinent here, Section 4(a) provides that indemnity claims related to the Governmental Proceedings shall be brought "solely pursuant to Section 12.1(b)(ii)(A) of the

---

[80] *Id.* ¶¶ 146, 156, 166, 175, 177 (explaining, in conjunction, that Buyers' indemnifiable legal and investigatory costs are due to the falsity of Section 4.21, which Buyers allege was false for the same reasons that Sections 4.20, 4.21, and 4.30 were fraudulent).

[81] *Id.* ¶ 66 (DOJ subpoena "requested documents and information dating back to almost three years before Buyers' acquisition of LGM"); Compl., Ex. 4 at 2, 4, 7-8 (Form 483 listing violations as far back as 2016).

[82] Letter Agreement § 4(a).

12

Purchase Agreement in respect of a breach of one or more Health Care Representations."[83]

Thus, the applicable survival period is that which pertains to the Health Care Representations—

namely, Purchase Agreement Section 12.1(a)(iii). That provision states in pertinent part:

> All of the representations and warranties that constitute Health Care Representations shall survive the Closing, and shall continue in full force and effect until . . . sixty (60) months thereafter . . . after which period such representations and warranties shall terminate and have no further force or effect[.][84]

Purchase Agreement Section 12.1(b)(ii) requires indemnity claims against the Sellers to be made

"before the end of [the applicable] survival period."[85]

The impact of Letter Agreement Section 4(a) and Purchase Agreement Sections

12.1(a)(iii) and 12.1(b)(ii) is that Buyers had to bring indemnity claims for the Governmental

Proceedings within sixty months of the closing date.[86] Since the acquisition closed on November

15, 2017,[87] Buyers had to bring this indemnity claim by November 15, 2022. Buyers sent notice

of their indemnity claim to Sellers on November 8, 2022.[88] But Buyers did not bring this suit

until September 1, 2023.[89] Accordingly, the pivotal question is whether the relevant date for

purposes of the survival period is the date on which the claimant submits notice or the date on

which the claimant files suit. Precedent instructs that it is the latter.

The "default" rule in Delaware is that to comply with a contractual survival period "the

party claiming breach *must file suit* within the specified time period. Providing notice within the

---

[83] *Id.*
[84] Purchase Agreement § 12.1(a)(iii).
[85] *Id.* § 12.1(b)(ii).
[86] *See GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *15 (Del. Ch. July 11, 2011) (holding a survival provision that provides for a fixed survival period requires the claimant to bring affected claims within the survival period).
[87] Compl. ¶ 18.
[88] *Id.* ¶ 138.
[89] *Id.* at p.53.

specified time period is not enough."[90] In *Pilot Air*, the plaintiff filed an indemnity notice within the survival period but did not bring suit until the survival period closed.[91] That resulted in the dismissal of the plaintiff's indemnity claims.[92]

The Court finds the holding in *Pilot Air* applicable here. Buyers had initially argued that Purchase Agreement Section 12.1(a)(iii) "lengthen[s] the applicable statute of limitations to five years," meaning Buyers had five years after discovering a breach to bring suit.[93] That construction is not supported by the language, "Health Care Representations shall survive the Closing, and shall continue in full force and effect until . . . sixty (60) months thereafter."[94] The term "thereafter" in that clause unambiguously refers to "the Closing" and not the unmentioned event of discovering a breach.

Buyers also claim that the IBS Defendants' position that the Health Care Representations terminated in November 2022 "demonstrates a deep misunderstanding of indemnification claims and when they accrue under Delaware law."[95] Buyers argue that indemnity claims do not accrue until the indemnitor refuses a demand, so Sellers' December 2022 refusal to indemnify started the three-year statutory clock for Buyers to bring a claim.[96] But accrual for purposes of 10 *Del. C.* § 8106 and the temporal limitations voluntarily created by contractual survival periods are

---

[90] *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at *14 (Del. Ch. Sept. 18, 2020) (emphasis in original) (quoting *Friedman Fleischer & Lowe, LLC v. Accentcare, Inc.*, 2016 WL 6967898, at *3 (Del. Ch. Nov. 29, 2016)); *see also ENI Hldgs., LLC v. KBR Grp. Hldgs., LLC*, 2013 WL 6186326, at *9-10 (Del. Ch. Nov. 27, 2013); *GRT, Inc.*, 2011 WL 2682898, at *9-10. Parties may contractually agree that notice tolls the limitations period, *see Aircraft Serv. Int'l, Inc. v. TBI Overseas Hldgs., Inc.*, 2014 WL 4101660, at *4 (Del. Super. Aug. 5, 2014), but the Purchase Agreement here does not so provide.

[91] *Pilot Air*, 2020 WL 5588671, at *12-13.

[92] *Id.* at *16.

[93] Pls.' Opp'n to IBS Defs. at 20.

[94] Purchase Agreement § 12.1(a)(iii).

[95] Pls.' Opp'n to Gideon at 21-22. Buyers made this argument in their opposition to Gideon's Motion. Pls.' Opp'n to Gideon at 21-24. The IBS Defendants, for their part, did not make the dispositive argument in their opening brief; instead, they first argued that Section 12.1(a)(iii) impermissibly lengthened the statute of limitations. IBS Defs.' Mot. at 20 n.3.

[96] Pls.' Opp'n to Gideon at 22-23 (first citing *Cooper Indus., LLC v. CBS Corp.*, 2019 WL 245819, at *4 (Del. Super. Jan. 10, 2019); and then citing *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 198 (Del. 2009)).

distinct concepts.  Indeed, Buyers' argument in this regard conflicts with *Pilot Air* and the precedent cited therein.[97]  Buyers' cases do not relate to, or even mention, survival periods, so they do not guide the Court's analysis of Purchase Agreement Section 12.1(a)(iii).[98]

Finally, Buyers raise the tolling principles of fraudulent concealment and equitable estoppel.[99]  The Court first notes that the Letter Agreement, which reveals Buyers' actual knowledge of the Governmental Proceedings, is dated July 23, 2020—more than three years before Buyers filed this suit.[100]  In *Pilot Air*, the court rejected an attempt to toll the survival period based on fraudulent concealment because the plaintiff was "indisputably on inquiry notice of the alleged breach well within the limitations period."[101]  The same is true here.  Moreover, Buyers do not explain why they should be permitted to predicate their indemnity claim on Sellers' fraud when they waived "claim[s] regarding fraud" in the Letter Agreement.[102]

In sum, the Purchase Agreement's plain language required the Buyers to file suit for indemnity claims related to the Health Care Representations by November 15, 2022.  The Letter Agreement confirms that the Governmental Proceedings relate to the Health Care Representations. Buyers did not file this suit until September 2023, so their indemnity claims are untimely and must be dismissed.

---

[97]  *See Pilot Air*, 2020 WL 5588671, at *12-14.
[98]  *See generally Cooper Indus.*, 2019 WL 245819; *LaPointe*, 970 A.2d 185.
[99]  Pls.' Opp'n to Gideon at 23-24.  Buyers cite no authority for the proposition that the tolling exceptions applicable to ordinary statute of limitations apply equally to bargained-for survival periods.  In *Pilot Air*, the Court of Chancery rejected application of fraud-based tolling of a survival period on factual, not legal, grounds.  2020 WL 5588671, at *15.  The Court follows suit here.
[100]  *See* Letter Agreement.
[101]  2020 WL 5588671, at *15.
[102]  Letter Agreement § 4(a).

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motions.

**IT IS SO ORDERED.**

July 10, 2024
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress