# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LING CHAI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-0393-LWW |
| | ) | |
| ROBERT MAGINN, JR., D. QUINN MILLS, and TORRENCE C. HARDER IV | ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JENZABAR, INC., a Delaware Corporation, | ) ) | |
| | ) | |
| Nominal Party. | ) | |

## MEMORANDUM OPINION

Date Submitted: June 24, 2024
Date Decided: October 1, 2024

Neil R. Lapinski, Phillip A. Giordano & Madeline R. Silverman, GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware; *Counsel for Plaintiff Ling Chai*

Thomas A. Uebler, Kathleen A. Murphy, Adam J. Waskie, Sarah P. Kaboly & Terisa A. Shoremount, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware; *Counsel for Defendant Robert Maginn, Jr.*

Thad J. Bracegirdle & Sarah T. Andrade, BAYARD, P.A., Wilmington, Delaware; *Counsel for Defendants D. Quinn Mills and Torrence C. Harder IV*

Albert H. Manwaring, IV, Kirsten A. Zeberkiewicz & Aubrey J. Morin, MORRIS JAMES LLP, Wilmington, Delaware; *Counsel for Nominal Party Jenzabar, Inc.*

**WILL, Vice Chancellor**

This is the third expedited action brought by the plaintiff in the past year about the membership of Jenzabar Inc.'s board. At various stages in the divorce of Jenzabar's founders, the plaintiff has executed written consents purporting to remove her ex-husband and other directors from the board. Before, she acted prematurely since divorce proceedings were ongoing and—despite insisting otherwise—she lacked majority control of Jenzabar. In her two prior suits, summary judgment was granted in favor of the defendants on multiple grounds.

Now, the division of marital assets, including Jenzabar shares, is nearly complete. The plaintiff has tried again to change the board's composition. But she makes contractual arguments that were or could have been raised in her earlier suits. Res judicata exists to prevent this sort of piecemeal litigation. Summary judgment is granted for the defendants once more.

## I. FACTUAL BACKGROUND

Unless otherwise noted, the following background is drawn from undisputed facts in the pleadings and documentary exhibits submitted by the parties.[1] Certain

---

[1] *See* Verified Compl. for Declaratory and Injunctive Relief (Dkt. 1) ("Compl."); Def. Robert A. Maginn, Jr.'s Answer to Verified Compl. for Declaratory and Injunctive Relief (Dkt. 50) ("Maginn Answer"); Defs.' D. Quinn Mills and Torrence C. Harder's Answer to Pl.'s Verified Compl. for Declaratory and Injunctive Relief (Dkt. 49) ("Mills and Harder Answer").

Exhibits to the Transmittal Affidavit of Sarah P. Kaboly, Esq. in Support of Defendant Robert Maginn, Jr.'s Opening Brief in Support of his Motion for Summary Judgment (Dkt. 58) are cited as "Maginn Opening Br. Ex. __." Exhibits to the Transmittal Affidavit of Madeline R. Silverman, Esq. in Support of Plaintiff's Answering Brief in

1

facts were set out in prior summary judgment decisions of this court addressing related claims.[2]

### A. Jenzabar's Governance

In April 1998, plaintiff Ling Chai and defendant Robert A. Maginn, Jr. co-founded Jenzabar Inc.[3] Jenzabar is governed by Amended and Restated Bylaws (the "Bylaws").[4] The Fourth Amended and Restated Stockholders Agreement dated June 30, 2004 (the "Stockholders Agreement") provides an additional governance framework.[5] Chai and Maginn are parties to the Stockholders Agreement.

Jenzabar is overseen by a Board of Directors. Section 4.2 of the Stockholder Agreement addresses the election of Board members.[6] As Jenzabar's "Founders," Chai and Maginn can designate two "Founder Designated Directors."[7] They selected themselves.[8] The Stockholders Agreement granted "Senior Investor" MCG

Opposition to Defendants' Motions for Summary Judgment (Dkt. 70) are cited as "Pl.'s Answering Br. Ex. __."

[2] *See Maginn v. Maginn*, 2023 WL 6811011 (Del. Ch. Oct. 16, 2023) ("*Maginn I*"); *Maginn v. Maginn*, C.A. No. 2023-1140-LWW (Del. Ch. Jan. 12, 2024) (TRANSCRIPT) (Dkt. 147) ("*Maginn II*"); *Maginn v. Maginn*, C.A. No. 2023-1140-LWW (Del. Ch. Mar. 11, 2024) (TRANSCRIPT) (Dkt. 165) ("*Maginn III*").

[3] Compl. ¶ 11; Maginn Answer ¶ 11; *see also* Mills and Harder Answer ¶ 11.

[4] Maginn Opening Br. Ex. 1 ("Bylaws").

[5] Compl. Ex. A ("S'holders Agreement").

[6] S'holders Agreement § 4.2.

[7] *Id.* § 4.2(a)(ii); *see id.* at Preamble (defining "Founders" as Chai and Maginn).

[8] Maginn Answer ¶¶ 2, 3.

Capital Corporation the right to designate a "Senior Investor Designated Director."[9]

Peter Malekian was chosen for that role.[10]

The Senior Investor Designated Director and Founder Designated Directors have the right to "designate[] by mutual agreement" two "Independent Director[s], provided that the Senior Investor Designated Directors' approval of Independent Director candidates recommended by the Founder Designated Directors [is] not [] unreasonably withheld or delayed."[11] Defendants D. Quinn Mills and non-party Joseph San Miguel were originally the Independent Directors.[12]

Malekian left the Board in 2013, leaving the Senior Investor Designated Director seat unfilled.[13]

The Stockholders Agreement and Bylaws also address the removal of Board members. Section 5.2 of the Bylaws concerns the removal of a Founder Designated Director:

> Any director designated by the holders of the Senior Preferred Stock or *any Founder Designated Director* (as defined in the Stockholders Agreement) may be removed during his or her term of office, either with or without cause, *only by the affirmative vote of the holders of* a majority of the then outstanding shares of

---

[9] S'holders Agreement § 4.2(a)(i); *see id.* at Preamble (defining "Senior Investor" as MCG Capital Corporation).

[10] Maginn Answer ¶ 13; Mills and Harder Answer ¶ 13.

[11] S'holders Agreement § 4.2(a)(iii) (emphasis removed).

[12] *See Maginn I*, 2023 WL 6811011, at *2; *cf. MCG Cap. Corp. v. Maginn*, 2010 WL 1782271, at *2 (Del. Ch. May 5, 2010) (addressing a related dispute).

[13] Maginn Answer ¶ 13; Mills and Harder Answer ¶ 13.

3

Senior Preferred Stock or *the voting securities held by the Founders* (as defined in the Stockholders Agreement), as the case may be, either at a meeting of such holders duly called for that purpose or pursuant to a written consent of such holders without a meeting, and any vacancy created by such removal may be filled only in the manner provided in Section 3.4.[14]

Section 4.2(b) of the Stockholders Agreement restricts the removal of directors, with exceptions including bad faith and willful misconduct:

No Investor or Stockholder shall vote to remove any director designated in accordance with the provisions of this Article IV, *except for bad faith or willful misconduct*, or if the party that designated such director no longer has the right to designate such director, or as otherwise provided in this Agreement.[15]

### B. The Divorce Proceeding and Jenzabar's Stockholders

On January 23, 2019, Chai initiated a divorce proceeding in the Probate and Family Court of the Commonwealth of Massachusetts.[16] Jenzabar stock was one of the primary marital assets in the divorce.[17]

Before their divorce, Chai and Maginn owned 62.27% of Jenzabar's issued and outstanding voting stock.[18] This stock was held directly or indirectly through

---

[14] Bylaws § 5.2 (emphasis added).

[15] S'holders Agreement § 4.2(b) (emphasis added).

[16] Maginn Answer ¶ 14; *see also Maginn I*, 2023 WL 6811011 at *3.

[17] Compl ¶ 15; Maginn Answer ¶ 15.

[18] There is some disagreement over whether Chai and Maginn own 62.39% or 62.27% of Jenzabar's stock. This decision will credit Chai's approach, focusing on the parties' jointly held voting stock, which excludes the 0.06% of non-voting Jenzabar stock Chai and Maginn each own. *See* Pl.'s Answering Br. in Opp'n to Defs.' Opening Br. in Supp. of Their Mots. for Summ. J. (Dkt. 70) ("Pl.'s Answering Br.") 5 n.27 (explaining that another

several entities (the "Affiliates"): the Chai Maginn Family LP (the "Family LP," a Nevada limited partnership), the Chai-Maginn Family LLC (the "Family LLC," a Delaware limited liability company), and New Media Investors II-C, LLP ("New Media II-C," a Delaware limited liability company).[19]

The Family LP previously owned the largest share with 41.71% of Jenzabar's issued and outstanding voting stock.[20]  A limited partnership agreement stated that the Family LP's General Partners were Maginn and Chai.[21]

When Chai and Maginn's divorce began, the Jenzabar Board consisted of Chai, Maginn, Mills, and San Miguel.[22]  In 2019, the Board formed a Special Committee of Mills and San Miguel to settle divorce-related matters that could affect Jenzabar.[23]

By this time, Maginn was involved in a lawsuit captioned *Deane v. Maginn* for breaching his fiduciary duties to New Media Investors II-B, LLC, a vehicle formed to facilitate investments in Jenzabar.[24] The alleged breach took place in

---

0.06% of non-voting Jenzabar shares are held by Chai and Maginn each, which are irrelevant to the issues before this court).  The difference has no bearing on the outcome of this dispute.

[19] Maginn Opening Br. Ex. 3 ¶¶ 75, 77; Maginn Opening Br. Ex. 4 ¶ 8(a).

[20] Maginn Opening Br. Ex. 3 ¶ 77.

[21] Pl.'s Answering Br. Ex. 12 at 1.

[22] *Maginn I*, 2023 WL 6811011, at *2.

[23] Maginn Answer ¶ 16; Harder and Mills Answer ¶ 16.

[24] Maginn Answer ¶ 17; *see Deane v. Maginn*, 2022 WL 16557974 (Del. Ch. Nov. 1, 2022).

2012. On November 1, 2022, this court found that Maginn usurped a corporate opportunity owed to that entity when he purchased and exercised warrants intended for it.[25]

### C. The Special Master and Ex Parte Order

The Massachusetts probate court presiding over Maginn and Chai's divorce referred the division of marital assets to a Special Master.[26] In January 2023, the Special Master issued a report concluding that the Jenzabar common stock owned and controlled by Chai and Maginn should be evenly divided.[27] To accomplish this, the Special Master recommended awarding certain percentages of Jenzabar stock owned by the Affiliates to Maginn and Chai.[28]

Maginn would control the shares held by New Media II-C as the sole member of the entity, which amounted to 19.09% of Jenzabar's common stock.[29] Chai was to transfer 12.045% of the total issued and outstanding shares of Jenzabar common

---

[25] Maginn Answer ¶ 17; *see Deane*, 2022 WL 16557974, at *19.

[26] *See* Maginn Opening Br. Ex 4 at 1.

[27] *Id.* ¶ 8(a)(i)-(v).

[28] *Id.*

[29] *Id.* ¶ 8(d).

stock from the Family LP to Maginn personally and retain 29.67% as the sole interest holder.[30]  She was also credited the Family LLC's 1.47% Jenzabar stake.[31]

On August 3, 2023, Chai filed an emergency motion for an ex parte hearing in the Massachusetts court.[32]  The same day, the Massachusetts court issued an ex parte order preliminarily adopting the Special Master's report.[33]

## D.      The First Written Consent and Section 225 Action

Upon receiving the ex parte order on August 3, Chai executed and delivered to Jenzabar a written consent putatively on behalf of a "majority" of Jenzabar's stock (the "First Written Consent").[34]  She purported to remove Mills from the Board.[35] Maginn did not sign or approve the First Written Consent.[36]

---

[30] *Id.* ¶ 8(a)(iii); Maginn Opening Br. Ex. 6 ¶ 8.  The Massachusetts court later amended the Special Master's report to assign 0.1% of stock previously unaccounted for, and directing the parties to transfer and assign 12.045% of the total Jenzabar shares from the Family LP to Maginn after accounting for stock attributable to the parties' children.  *See* Maginn Opening Br. Ex. 6 ¶ 8.

[31] Maginn Opening Br. Ex 4 ¶ 8(a)(iv).

[32] *Maginn I*, 2023 WL 6811011, at *3.

[33] *Id.* (quoting ex parte order).

[34] *Id.* (quoting written consent); Maginn Opening Br. Ex 8.

[35] Maginn Opening Br. Ex 8.

[36] *Maginn I*, 2023 WL 6811011, at *3.

On August 8, 2023, Chai filed an action in this court under 8 *Del. C.* § 225 (the "First 225 Action").[37] She sought, among other things, a declaration that the First Written Consent was valid and that Mills was no longer on the Board.[38]

On October 16, 2023, this court issued an opinion holding that the First Written Consent was invalid because Chai lacked the authority to execute it.[39] "Maginn remain[ed] a General Partner of the Family LP," and "[t]he Family LP Agreement grant[ed] each General Partner one vote."[40] Without control of the Family LP and a successful transfer of its Jenzabar shares, she could not direct a majority of Jenzabar's voting shares.[41] Mills therefore "[remained] a member of both the Jenzabar Board and Special Committee."[42] The First 225 Action is an open matter; Chai filed a letter seeking relief in the matter earlier this year.[43]

---

[37] *Id.* at *1.

[38] *Id.*

[39] *Id.* at *7.

[40] *Id.* at *6.

[41] *Id.* at *5.

[42] *Id.* at *7.

[43] Letter, *Maginn*, 2023 WL 6811011 (Dkt. 79).

**E.     The Second and Third Written Consents**

On October 23, 2023, Maginn filed a complaint in the District Court of Clark County Nevada (the "Nevada Action") to prevent Chai from acting as the Family LP's sole General Partner.[44]

The next day, the Massachusetts court held that "[t]he parties shall cooperate in taking all steps necessary to transfer the parties' interest in [the Family LP] solely to [Chai] and remove [Maginn] therefrom."[45]  It ordered that the Special Master would be "empowered to execute any and all documents necessary to effectuate the terms of [the] Judgment on behalf [of Maginn]."[46]  Maginn did not complete the transfer and, on October 26, the Special Master signed documents purporting to transfer Maginn's interests in the Family LP to Chai and remove Maginn as General Partner.[47]

Chai executed a written consent the same day (the "Second Written Consent").[48]  Her signature page represented that she was acting as the Family LP's General Partner.[49]  The resolution purported to remove Mills as an Independent

---

[44] *Maginn II*, No. 2023-1140-LWW, at 6; *see also* Maginn Opening Br. Ex. 16 ¶ 1.

[45] *Maginn II*, C.A. No. 2023-1140-LWW, at 6.

[46] *Id.*

[47] *Id.* at 6-7.

[48] *Id.* at 7; Maginn Opening Br. Ex. 11.

[49] *Maginn II*, C.A. No. 2023-1140-LWW, at 7; Maginn Opening Br. Ex. 11 at 3.

Director and appoint Michael Flaherty, Carmelina Procaccini, and Dr. Li Chai to the Board.[50]

Around the same time, Mills and Maginn held a meeting of the Jenzabar Board. Mills, acting pursuant to Section 3.4 of the Bylaws, appointed defendant Torrence C. Harder IV to the Independent Director seat that became vacant when San Miguel died in July 2023.[51]

On October 29, Chai delivered another written consent (the "Third Written Consent") to the Board.[52] This version was largely duplicative of the Second Written Consent.[53] It adopted the same resolution but purported to unilaterally transfer the Family LP's Jenzabar shares to Chai.[54] Chai's signature page represented that she was acting as the majority stockholder of Jenzabar.[55]

## F. The Second Section 225 Action

On November 8, 2023, Chai initiated another lawsuit in this court (the "Second 225 Action") against Maginn, Mills, and Jenzabar.[56] Her complaint

---

[50] *Maginn II*, C.A. No. 2023-1140-LWW, at 7; Maginn Opening Br. Ex. 11.

[51] *Maginn II*, C.A. No. 2023-1140-LWW, at 7-8; Maginn Answer ¶ 18; Mills and Harder Answer ¶ 18; Bylaws § 3.4 (addressing Board vacancies).

[52] *Maginn II*, C.A. No. 2023-1140-LWW, at 8; Maginn Opening Br. Ex. 12.

[53] *Compare* Maginn Opening Br. Ex. 11, *with* Maginn Opening Br. Ex. 12.

[54] Maginn Opening Br. Ex. 12.

[55] *Id.* at 3.

[56] Maginn Opening Br. Exs. 13-15.

included four counts: a claim for books and records under 8 *Del. C.* § 220; a claim under 8 *Del. C.* § 225; a claim for breach of the Stockholders Agreement; and a claim for a declaratory judgment regarding the rights and duties in the Stockholders Agreement.[57] The parties proceeded to file cross-motions for summary judgment, which were argued on January 2, 2024.[58]

Six days later, a preliminary injunction was issued in the Nevada Action.[59] The Nevada court confirmed that Maginn remained, at that time, a General Partner of the Family LP and barred Chai from acting as sole General Partner.[60]

On January 12, I delivered a bench ruling in the Second 225 Action that granted summary judgment on Count II (the Section 225 claim) in favor of Maginn and Mills.[61] I held that because Chai could not unilaterally direct the Family LP and did not own or control a majority of Jenzabar's voting stock, the Second and Third Written Consents were unauthorized and invalid.[62]

On March 11, I issued a second bench ruling resolving the cross-motions for summary judgment on Counts III (breach of the Stockholders Agreement) and IV

---

[57] Maginn Opening Br. Ex. 15; *Maginn II*, C.A. No. 2023-1140-LWW, at 8.

[58] Tr. of Oral Arg., *Maginn*, C.A. No. 2023-1140 (Dkt. 146).

[59] Maginn Opening Br. Ex. 16; *Maginn II*, C.A. No. 2023-1140-LWW, at 11-12.

[60] Maginn Opening Br. Ex. 16; *Maginn II*, C.A. No. 2023-1140-LWW at 11-12.

[61] *See* Maginn Opening Br. Ex. 17.

[62] *Maginn II*, C.A. No. 2023-1140-LWW, at 14-15.

(declaratory judgment).[63]  Chai had argued that because there was no Senior Investor Designated Director on the Board after Malekian's departure, she and Mills were obligated to vote to remove Mills under Section 4.2(b) of the Stockholders Agreement.[64]  I held that Chai's attempt to remove Mills from his position on that basis was equitably barred by laches and acquiescence since Malekian had left in 2013.

## G.  The Assignment and Additional Written Consents

Meanwhile, on March 8, the Massachusetts court issued its Third Supplemental Judgment of Divorce.[65]  It stated that Maginn would cease to be a General Partner of the Family LP by effect of the transfer of his partnership interest to Chai.[66]  On March 12, Maginn's general and limited partnership interests in the Family LP were assigned to Chai.[67]  In response, the Nevada court dissolved its preliminary injunction.[68]

On April 12, 2024, Chai, as sole General Partner of the Family LP, assigned certain of the Family LP's Jenzabar shares to Maginn and other shares to herself (the

---

[63] *Maginn III*, C.A. No. 2023-1140-LWW.

[64] *Id.* at 12; Pl.'s Suppl. Br. in Supp. of Mot. Summ. J., *Maginn*, C.A. No. 2023-1140-LWW (Dkt. 137).

[65] Maginn Opening Br. Ex. 7 at 2.

[66] *Id.* at 2-3.

[67] Pl.'s Answering Br. Ex. 9 at 8.

[68] *Id.* at 10-11, 16.

"Assignment").[69]  The Family LP retained some Jenzabar shares for the benefit of Chai and Maginn's children.

The same day as the Assignment, Chai executed three more written consents.

One written consent purports to remove Mills and Harder from the Board and appoint Chai, Flaherty, and Procaccini (the "Fourth Written Consent") under Sections 3.4 and 5.2 of the Bylaws.[70]  It purports to once again remove Mills under Section 4.2(b) of the Stockholders Agreement.  It also states that since San Miguel's term expired upon his death, Harder's appointment to fill San Miguel's unexpired term was invalid under Sections 3.2 and 3.4 of the Bylaws.[71]

Another written consent purports to remove Maginn from the Board under Section 4.2(b) of the Stockholders Agreement and Section 5.2 of the Bylaws (the "Fifth Written Consent").[72]  It states that Maginn's removal under Section 4.2(b) was premised on this court's finding in *Deane* that Maginn "breached his duty of loyalty to the investors of a separate investment vehicle by obtaining [Jenzabar] warrants that were intended for those investors and doing so by having the [Special Committee] believe that those warrants were being issued to those same investors."[73]

---

[69] Pl.'s Answering Br. Exs. 10-11.

[70] Pl.'s Answering Br. Ex. 15.

[71] *Id.*

[72] Pl.'s Answering Br. Ex. 14.

[73] *Id.*

A third written consent executed by the "new" Board purports to remove Maginn as CEO, President, and Chair of Jenzabar, and to install Chai into those positions (the "Sixth Written Consent").[74]

Both the Fourth and Fifth Written Consents invoke Section 5.2 of the Bylaws and represent that Chai is acting as the Founder with a majority of Jenzabar's issued and outstanding voting stock. This alleged status as the majority-owning Founder results from the following transfers of Jenzabar common stock purportedly effected on April 12 from certain Affiliates to Chai:[75]

- 10,122,944 Jenzabar shares held by Chai after the Assignment of the Family LP's shares to her,[76] and

- 500,000 Jenzabar shares previously held by the Family LLC that were later assigned to Chai.[77]

Chai and trustees of the Chai-Maginn Family Trust allegedly own the Chai Family LLC.[78] On February 8, 2024, the Family LLC was purportedly merged into the Chai Family LLC, with the latter surviving and assuming all assets and liabilities of the

---

[74] Pl.'s Answering Br. Ex. 16.

[75] Maginn is not contesting the Assignment from the Family LP to Chai but reserves the right to dispute whether Chai has the authority to act exclusively on behalf of the Family LLC's succeeding entity, the Chai Family LLC. *See* Def. Robert Maginn, Jr.'s Opening Br. in Supp. of His Mot. for Summ. J. (Dkt. 58) ("Maginn Opening Br.") 13 n.1.

[76] Compl. Ex. E; Pl.'s Answering Br. Ex. 11.

[77] Compl. Ex. F.

[78] Pl.'s Answering Br. Ex. 7.

former.[79]  According to Chai, these transfers brought the total shares of Jenzabar voting stock in her name to 10,622,944.

Chai alleges that Maginn controls the following holdings:

- 4,077,730 shares due to the Assignment of the Family LP's Jenzabar shares to Maginn,[80] and

- 6,500,000 Jenzabar shares held by New Media II-C.[81]

Based on these figures, Chai maintains that she holds 6,545,214 more shares than Maginn individually, and 45,214 more shares if New Media II-C's Jenzabar shares are considered.[82]

## H.    The Third Section 225 Action

On April 12—the day the Fourth, Fifth, and Sixth Written Consents were executed—Chai filed this lawsuit (the "Third 225 Action") against Maginn, Mills, and Harder.[83]  Jenzabar is named as a nominal party.  Her complaint seeks a declaration under 8 *Del. C.* § 225 that Mills, Harder, and Maginn were validly

---

[79] *Id.*

[80] Compl. Ex. D.

[81] Maginn Opening Br. Ex 3 ¶ 77; Maginn Opening Br. Ex 4 ¶ 8(d).  Maginn is the sole member of New Media II-C.  Maginn Opening Br. Ex 4 ¶ 8(d).

[82] Pl.'s Answering Br. 15-16; Compl. ¶¶ 29-32.  Taking these figures and purported transfers as true, Chai personally controls 10,622,944 (10,622,944 + 500,000) shares. Maginn personally controls 4,077,730 shares from the Assignment.   He controls 10,577,730 (4,077,730 + 6,500,000) shares when counting those held in New Media II-C. This would imply that Chai controls 6,545,214 more shares than Maginn, and 45,214 more shares counting those of New Media II-C.

[83] Compl. ¶¶ 33-35.

removed from the Board and that Flaherty, Procaccini, and Li Chai replaced them as directors.[84]

Maginn, Mills, and Harder, filed opening briefs in support of their summary judgment motions on May 24.[85] Chai filed an answering brief in opposition to the motions on June 12.[86] Maginn, Mills, and Harder filed reply briefs in further support of their motions on June 19.[87] Oral argument was held on June 24.[88]

Separately, in the Second 225 Action, Chai's claim for books and records under Section 220 remains. Over her objection, on July 1, I granted a final order and judgment in the Section 225 Action on the Section 225, breach of contract, and declaratory judgment claims.[89] Chai subsequently appealed the January 12 and March 11 summary judgment rulings in the Second 225 Action. That appeal remains pending.

## II.     ANALYSIS

Under Court of Chancery Rule 56, summary judgment is granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled

---

[84] *Id.* ¶¶ 40-41.

[85] Dkts. 58, 60.

[86] Dkt. 70.

[87] Dkts. 72-73.

[88] Dkt. 90.

[89] Final Order and J. Counts II, III, and IV, *Maginn*, C.A. No. 2023-1140-LWW (Dkt. 179).

16

to a judgment as a matter of law."[90]  The court must draw all reasonable inferences in the light most favorable to the non-movant.[91]

Maginn, Harder, and Mills seek summary judgment on several grounds including res judicata.  Harder and Mills also argue that the Fourth Written Consent is invalid because it violates the Stockholders Agreement.  And Maginn argues that the Fifth Written Consent is invalid because Chai is not a Founder with a majority of Jenzabar's voting stock and because it violates the Stockholders Agreement.  Because res judicata and other equitable defenses prove dispositive, I decline to reach these other arguments.

## A.    Res Judicata

In the second summary judgment ruling of the Second 225 Action, I granted summary judgment in favor of the defendants on Chai's claims for breach of Section 4.2(b) of the Stockholders Agreement and for a related declaratory judgment.[92]

Summary judgment was granted in part because these claims were untimely. Chai sought specific performance of an alleged obligation that arose in 2013 upon

---

[90] Ct. Ch. R. 56(c).

[91] *See Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 241 (Del. 2009) ("The facts, and all reasonable inferences, must be considered in the light most favorable to the non-moving party.").

[92] *Maginn III*, C.A. No. 2023-1140-LWW, at 13.

17

Malekian's departure from the Board, which was well outside the applicable statute of limitations.[93] Laches and acquiescence also barred her claim since she had signed the Stockholders Agreement, knew the Senior Investor Designated Director seat was vacated in 2013, and affirmatively behaved as though Mills was a director and Special Committee member for years.[94]

Chai now seeks another bite at the apple. In the present Section 225 action— her third in a year's time—she relies on Section 4.2(b) of the Stockholders Agreement, as in her prior suits. She now invokes a different clause of Section 4.2(b) in addition to Section 5.2 of the Bylaws based on an assertion that she controls a majority of the Founders' Jenzabar voting stock.[95] But Chai could have raised these arguments in the Second 225 Action—if not the First 225 Action. Her claim is therefore barred by res judicata.

Res judicata prevents a plaintiff from undertaking the sort of fragmented litigation strategy Chai has employed.[96] Interim developments in the divorce proceeding prompted impulsive attempts to reconstitute the Board and file expedited

---

[93] *Id.* at 16-18.

[94] *Id.* at 18-21.

[95] *See supra* notes 75-82 and accompanying text.

[96] *See LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009) ("Res judicata exists to provide a definite end to litigation, prevent vexatious litigation, and promote judicial economy.") (citation omitted); *see also Hayford v. Citicorp Trust Bank*, 2007 WL 2985049, at *2 (Del. Ch. Oct. 11, 2007) ("Res judicata . . . stands as a foundation of the legal system, judicially created in order to ensure a definitive end to litigation.").

litigation to confirm the validity of her acts. At each step, Chai told the court that she controlled a majority of Jenzabar's voting stock and that she was entitled to remove directors under Section 4.2(b) of the Stockholders Agreement. After twice losing on summary judgment, Chai returns to this court to try her hand at a modified yet unoriginal contractual argument.

Res judicata "prevent[s] [such] multiplicity of needless litigation of issues by limiting parties to one fair trial of an issue or cause of action which has been raised or should have been raised in a court of competent jurisdiction."[97] Even if Chai did not raise the precise theory she presently advances, "[t]he procedural bar of res judicata extends [to] all issues that might have been raised and decided in the first suit as well as to all issues that actually were decided."[98] She cannot "split[] [her] claim and seek[] the same relief in subsequent litigation under a different substantive theory."[99]

Res judicata bars a claim when five factors are met:

> (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided

---

[97] *LaPoint*, 970 A.2d at 192.

[98] *Id.* at 191-92.

[99] *Id.* at 196.

adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.[100]

Each is easily satisfied.

First Factor. This court had jurisdiction over the First and Second Section 225 Actions.[101]

Second Factor. Chai, Maginn, and Mills were parties to the First and Second 225 Actions.[102] Harder is in privity with Mills, for whom summary judgment was granted in the Second 225 Action. Harder and Mills's interests in applying the prior ruling are aligned.[103] Chai does not argue otherwise.

Third Factor. All three of Chai's actions concern her ability to remove other Board members under Section 4.2(b) of the Stockholders Agreement.[104] In the First and Second 225 Actions, the central issue was whether Chai had the authority to unilaterally remove and replace the Independent Directors. Chai also maintained

---

[100] *Id.* at 192 (citations omitted).

[101] *See Maginn I*, 2023 WL 6811011*; Maginn II*, C.A. No. 2023-1140-LWW*; Maginn III*, C.A. No. 2023-1140-LWW.

[102] Compl., *Maginn*, 2023 WL 6811011 (Dkt. 1); Compl., *Maginn*, C.A. No. 2023-1140-LWW (Dkt. 1).

[103] *See Levinhar v. MDG Med., Inc.*, 2009 WL 4263211, at *8 (Del. Ch. Nov. 24, 2009) (explaining that parties were in privity where their relationship "is such that a judgment involving one of them may justly be conclusive on the others, although those others were not party to the lawsuit") (citing *Higgins v. Walls*, 901 A.2d 122, 138 (Del. Super. 2005)).

[104] *See* Pl.'s Combined Opening Br. in Support of Mot. for Summ J. and Opp'n to Def.'s Mot. for Summ. J, *Maginn*, 2023 WL 6811011 (Dkt. 35); Compl., *Maginn*, C.A. No. 2023-1140-LWW (Dkt. 1).

that, once the Senior Investor no longer held Jenzabar stock, Section 4.2(b) of the Stockholders Agreement provided an exception to Section 4.2(a) and compelled stockholders to vote their shares to remove the Independent Directors. In the Second 225 Action, that argument was rejected as untimely under the statute of limitations and on laches and acquiescence grounds.[105]

Chai insists that this case is different because she is—for the first time—invoking removal authority under Section 5.2 of the Bylaws.[106] But as noted, res judicata concerns not only whether an issue was raised in a prior proceeding, but also whether it *could have been* raised.[107] The court must pragmatically assess whether the issues "are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[108]

---

[105] *Maginn III*, C.A. No. 2023-1140-LWW, at 16-21.

[106] Pl.'s Answering Br. 39-40.

[107] *See LaPoint*, 970 A.2d at 192; *see also Julian v. E. States Const. Serv., Inc.*, 2009 WL 1211642, at *5 (Del. Ch. May 5, 2009) ("Res judicata constitutes an absolute bar to all claims or defenses that were litigated or which could have been litigated in the earlier proceeding."); *Trans World Airlines, Inc. v. Hughes*, 317 A.2d 114, 118 (Del. Ch. 1974) (explaining that res judicata "constitutes an absolute bar to a subsequent action on the same claim as to the parties and their privies on all theories which were litigated or which could have been litigated in the earlier proceeding").

[108] *LaPoint*, 970 A.2d at 193 (citing Restatement (Second) of Judgments § 24(2) (1982)).

21

Chai reframes the factual allegations in previous actions to suggest that she is now invoking a separate contractual right.[109]  She asserts that she could not have previously raised it because "[her] ability to exercise her rights as a Founder with the most voting securities did not exist until April 12, 2024" when the Assignment occurred.[110]

But according to Chai's sworn representations to this court in the First and Second 225 Actions, she was (or could have become) the Founder with the most voting securities.  In those actions, Chai allegedly controlled most of Jenzabar's voting stock through shares held personally and through Affiliates.  For example, she alleged the following in her prior complaints:

- Chai is the controlling interest holder in the Chai-Maginn Family Limited Partnership (the '[Family] LP').  The Chai-Maginn Family LLC (the '[Family] LLC'), which together with the Jenzabar shares Chai owns personally effectively make Chai Jenzabar's majority shareholder.[111]

- As of October 26, 2023, Chai became the controlling interest holder in the Chai-Maginn Family Limited Partnership (the 'Family LP'). The Chai-Maginn Family LLC (the 'Family LLC'), which together with the Jenzabar

---

[109] *DeRamus v. Redman*, 1986 WL 13089, at *5 (Del. Super. Nov. 14, 1986) ("It is generally held that res judicata bars relitigation of the same claim even where a new legal theory is advanced as a basis for relief in a second suit.").

[110] Pl.'s Answering Br. 33-34.

[111] Compl., *Maginn*, 2023 WL 6811011, at ¶ 2 (Dkt. 1).

shares Chai owns personally effectively make Chai Jenzabar's majority shareholder.[112]

Chai consistently represented that she could act as the sole General Partner of the Family LP pursuant to the Massachusetts court's judgment.[113] She also argued in the Second 225 Action that the Third Written Consent had the effect of transferring the Family LP's Jenzabar shares to her individually, making her Jenzabar's majority stockholder.[114] Chai further maintained that she held a controlling interest in the Chai Family LLC with the cooperation of her sister Li Chai, who is the Chai Family LLC's co-manager.[115] In a sworn affidavit filed in the Second 225 Action, Chai affirmed that she was Jenzabar's "majority shareholder" after becoming a co-manager of the Family LLC and the Special Master's October 26 purported transfer of the Family LP's interests to her.[116]

Chai now cites to Section 5.2 of the Bylaws, which grants a removal right to "the holders of a majority of . . . the voting securities held by the Founders."[117] She

---

[112] Compl., *Maginn*, C.A. No. 2023-1140-LWW, ¶ 3 (Dkt. 1).

[113] Pl. Mot. for Summ. J., *Maginn*, C.A. No. 2023-1140-LWW, at 13 (Dkt. 40); Pl. Mot. for Summ. J., *Maginn*, 2023 WL 6811011, at 6 (Dkt. 35).

[114] *Maginn II*, C.A. No. 2023-1140-LWW, at 8.

[115] Pl.'s Mot. for Summ. J., *Maginn*, 2023 WL 6811011, at 11-12 (Dkt. 35); Pl.'s Mot. for Summ. J., *Maginn*, C.A. No. 2023-1140-LWW, at 3 (Dkt. 40).

[116] Aff. of Ling Chai Maginn in Supp. of Pl.'s Mot. for Summ. J., *Maginn*, C.A. No. 2023-1140-LWW, ¶¶ 7, 17, 20, 53 (Dkt. 7).

[117] Bylaws § 5.2.

23

believes that only shares held by a Founder individually, and not shares held by a Founder's Affiliates, should count.[118]  And she asserts that she did not personally hold a majority of the "voting securities held by the Founders" until she received her portion of the Family LP's Jenzabar shares through the Assignment.[119]  As the Founder with the most voting securities, Chai claims that she can remove the defendants from the Board under Section 4.2(b) of the Stockholders Agreement—Maginn for bad faith or willful misconduct, and Mills and Harder because the parties that designated them allegedly lost the right to do so.[120]

Chai could have raised these very same arguments under Section 5.2 of the Bylaws and Section 4.2(b) of the Stockholders Agreement before.  She chose instead to split her claim.  While appealing the summary judgment decision in the Second 225 Action, she filed this action advancing a contract argument based on the same facts and issues raised before.

The present action includes an additional assertion that Harder should be removed from the Board because Mills lacked the authority to appoint Harder to San Miguel's vacant seat.[121]  But Harder's appointment predated the Second 225 Action

---

[118] Pl.'s Answering Br. 19.

[119] *Id.* at. 33.

[120] Compl. ¶¶ 33-34; Pl.'s Answering Br. 26-27, 40-44.

[121] *See* Pl.'s Answering Br. Ex. 15; *see also* Compl. ¶ 33.

and could have been raised then.  In fact, Chai acknowledged Harder's appointment in the Second 225 Action but chose not to contest it.[122]

Fourth Factor.  Chai lost both the First and Second 225 Actions on summary judgment.

Fifth Factor.  The First and Second 225 Actions resulted in a final decree. "[A] decision on a motion for summary judgment is a final decision on the merits, which enables the defense of *res judicata* to be raised in subsequent actions between the parties."[123]  Despite Chai's objection, a final judgment was entered on Counts II through IV in the Second 225 Action.[124]

\* \* \*

Chai's claims are barred by res judicata.  She needed to bring all related theories of recovery in a single action.[125]  Her failure to do so undermined "the conservation of scarce judicial resources, the stability and finality of judicial decrees

---

[122] *Maginn III*, C.A. No. 2023-1140-LWW, at 22.

[123] *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980).

[124] Final Order and J. Counts II, III, and IV, *Maginn*, C.A. No. 2023-1140-LWW (Dkt. 179).

[125] *See Maldonado v. Flynn*, 417 A.2d 378, 383 (Del. Ch. 1980); *see also Glaser v. Norris*, 1992 WL 14960, at *15 (Del. Ch. Jan. 6, 1992) (recognizing that res judicata permits a litigant to have "one and only one day in court").

and repose for the litigants from vexatious renewal of the same lawsuit."[126]  This is the sort of gamesmanship res judicata is designed to prevent.

My analysis can end here.  For the sake of completeness, and to deter further lawsuits based on circumstances that have existed for over a decade, I go on to consider whether equitable defenses also support granting summary judgment.

## B.     Laches and Acquiescence

Chai asserts that she can remove Maginn under Section 4.2(b) of the Stockholders Agreement for "bad faith and willful misconduct."[127]  The purported misconduct she cites occurred in 2012.  As to Mills and Harder, her removal argument stems from the fact that the Senior Investor Designated Director seat is vacant—which occurred in 2013.  She has, for over a decade, served as a Board member alongside Mills and Maginn without raising these theories.  As a result, the defendants argue that her claims are barred by laches and acquiescence.[128]  I agree.

### 1.     Laches

"Laches bars an action in equity if '[t]he plaintiff waited an unreasonable length of time before bringing the suit and . . . the delay unfairly prejudices the

---

[126] *Glaser*, 1992 WL 14960, at *15 (quoting *Sternberg v. O'Neill*, 1989 WL 137932 (Del. Ch. Nov. 9, 1989)).

[127] S'holders Agreement § 4.2(b); Compl. ¶ 34; *see* Pl.'s Answering Br. 26-32.

[128] Maginn makes these arguments explicitly.  Harder and Mills raise Chai's unreasonable delay amid other arguments.

defendant.'"[129] The defense applies to Section 225 claims.[130] A successful showing of laches involves three elements: (1) knowledge of the claim by the claimant, (2) unreasonable delay in bringing the claim, and (3) prejudice to the defendant as a result of the delay.[131] Each element is satisfied here.

Regarding Maginn, the misconduct that Chai relies on to remove him from the Board was addressed in the *Deane* litigation.[132] This court's post-trial decision was issued in November 2022, but the underlying conduct occurred a decade earlier. As explained in *Deane*, in June 2012, Maginn breached his duty of loyalty to the members of New Media Investors II-B, LLC when warrants belonging to that entity were issued to New Media II-C instead, which was "solely owned" by Maginn and Chai.[133] Even if Chai were ignorant of these events in 2012, she would have gained knowledge by December 6, 2016 when Deane sued Maginn.[134]

---

[129] *Whittington v. Dragon Grp., L.L.C.*, 991 A.2d 1, 8 (Del. 2009) (citing *Hudak v. Procek*, 806 A.2d 140, 153 (Del. 2002)).

[130] *See Klaassen v. Allegro Dev. Corp.*, 2013 WL 5739680 (Del. Ch. Oct. 11, 2013) (applying laches and acquiescence to a claim under 8 *Del. C.* § 225), *aff'd,* 106 A.3d 1035 (Del. 2014); *Martin v. Med-Dev Corp.*, 2015 WL 6472597, at 14-15 (Del. Ch. Oct. 27, 2015) (applying laches and other equitable defenses to claims under 8 *Del. C.* § 225); *Zohar III Ltd. v. Stila Styles, LLC*, 2022 WL 1744003, at *9 (Del. Ch. May 31, 2022) (applying laches and acquiescence to a claim under 6 *Del. C.* § 18-110), *aff'd sub nom. Tilton v. Zohar III Ltd., Inc.*, 285 A.3d 1204 (Del. 2022).

[131] *Whittington*, 991 A.2d at 8.

[132] *See Deane*, 2022 WL 16557974, at *19.

[133] *Id.* at *5.

[134] *Id.* at *7.

Chai alludes to the analogous statute of limitations to oppose Maginn's laches argument. She points out that Maginn was not found liable in *Deane* until November 2022—less than three years before she filed this action.[135] Section 4.2(b) of the Stockholders Agreement, however, concerns the removal of directors for bad faith or willful misconduct. It does not require a predicate finding of a breach of fiduciary duty. Accordingly, Chai unreasonably delayed in bringing her claim to remove Maginn for the wrongdoing raised in *Deane*. That is particularly true since a Section 225 action is viewed as a summary proceeding.[136]

Regarding Mills and Harder, Chai argues that they should be removed under Section 4.2(b) of the Stockholders Agreement because Malekian resigned from his position as Senior Investor Designated Director in 2013 when MCG Capital divested from Jenzabar.[137] I addressed this contention in the Second 225 Action. Chai has known of Malekian's resignation since 2013.[138] She also knew that the terms of the

---

[135] Pl.'s Answering Br. 34 n.114.

[136] *See, e.g.*, *Stengel v. Rotman*, 2001 WL 221512, at *8 (Del. Ch. Feb. 26, 2001) (citation omitted), *aff'd sub nom. Stengel v. Sales Online Direct, Inc.*, 783 A.2d 124 (Del. 2001); *see also Klaassen*, 2013 WL 5739680, at *20 (holding that a plaintiff's seven-month delay in challenging his removal was barred by laches).

[137] Pl.'s Answering Br. 40-45. As noted above, Harder and Mills did not make a specific laches argument in their summary judgment brief. They did, however, raise unreasonable delay in the context of their res judicata arguments. To the extent their delay arguments are properly raised, I address them here. *See* Harder and Mills Answer 20 (raising equitable affirmative defenses). In any event, this exact argument was disposed of in the Second 225 Action.

[138] *Maginn II*, C.A. No. 2023-1140-LWW, at 18-19.

28

Stockholder's Agreement required prompt removal under these circumstances.[139]

But she waited ten years to act. This was an unreasonable delay.

Often, "[t]he reasons for the delay are more critical than the amount of time that has elapsed."[140] Chai argues that she did not delay since she just recently became the Founder with the most Jenzabar voting securities. Still, Chai could have but failed to pursue the removal of Mills or Maginn "promptly," as required by Section 4.2(b).[141] She chose not to raise her ability to remove Maginn in the First or Second 225 Actions but waited until the Third 225 Action.

The defendants have been prejudiced by Chai's delay.[142] They have been burdened with uncertainty and repeated expedited lawsuits. And Jenzabar has been under the cloud of a status quo order and divorce-fueled control dispute for over a year.

Laches therefore supports summary judgment in the defendants' favor.

---

[139] *Id.*

[140] *Klaassen*, 2013 WL 5739680, at *20; *see also IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174, 177 (Del. 2011).

[141] S'holders Agreement § 4.2(b) ("If a party shall cease to have the right to designate a director or directors, all parties shall vote, and take all other actions necessary, to promptly remove the director(s) that such party is no longer entitled to designate.").

[142] *See Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 979 (Del. Ch. 2016) ("The Court also may presume prejudice if the claim is brought after the analogous limitations period has expired."); *see also Whittington*, 991 A.2d at 9 ("[A] party's failure to file within the analogous period of limitations will be given great weight in deciding whether the claims are barred by laches.").

2. <u>Acquiescence</u>

Acquiescence applies when the party who could challenge a particular act, having "full knowledge of its rights and the material facts," engages in conduct that leads the other party to believe reasonably that the act had been approved.[143] Approval may be conveyed when the claimant "(1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved."[144]

Maginn argues that Chai acquiesced to his Board membership despite the *Deane* litigation.[145] As explained above, Chai has had knowledge of the conduct at issue in *Deane* for years. It was not until the Fifth Written Consent on April 12, 2024 that she first sought to remove Maginn for this conduct. Until then, she affirmatively treated Maginn as a director—including as reflected by the First,

---

[143] *Klaassen*, 106 A.3d at 1047; *see also Lehman Bros. Hldgs. Inc. v. Spanish Broad. Sys., Inc.*, 2014 WL 718430, at *9 (Del. Ch. Feb. 25, 2014) ("The doctrine of acquiescence effectively works an estoppel: where a plaintiff has remained silent with knowledge of her rights, and the defendant has knowledge of the plaintiff's silence and relies on that silence to the defendant's detriment, the plaintiff will be estopped from seeking protection of those rights."), *aff'd*, 105 A.3d 989 (Del. 2014).

[144] *Klaassen*, 106 A.3d at 1047.

[145] Maginn Opening Br. 23-24.

Second, and Third Written Consents. Through these acts, Maginn had reason to believe that Chai would not seek his removal.[146]

Acquiescence also supports summary judgment for the defendants.

## C. Looking Ahead

Chai is not entitled to the declarations she seeks about the validity of the Fourth, Fifth, and Sixth Written Consents; the composition of the Board; the identity of Jenzabar's CEO, President, and Chair; the actions taken by purported Board members; and the existence of the Special Committee.[147] This is primarily because of her tactical litigation choices, which triggered the application of res judicata. To hold otherwise would undermine the finality of judgments and policies against piecemeal litigation.

What this means for the control of Jenzabar, however, is unideal. The instability of Jenzabar's governance persists. If Chai truly holds a majority of Jenzabar's voting securities, she may be entitled to exercise her rights as such under the Stockholders Agreement and Bylaws.

This decision does not bar Chai from doing so in the future. It says nothing about her ability to invoke Section 4.2(b) of the Stockholders Agreement or Section

---

[146] In the second summary judgment decision in the Second 225 Action, I held that acquiescence also barred Chai's claim that Mills was to be removed under Section 4.2(b) of the Stockholders Agreement since there is no longer a Senior Investor Designated Director. *See supra* notes 93-94 and accompanying text.

[147] Compl. ¶ 41.

5.2 of the Bylaws based on new facts. What she cannot do is sue again to press the same arguments about misconduct from 2012 and vacancies in 2013 that she could and should have raised before.

After hearing several lawsuits involving Chai and Maginn's divorce, I have little faith that they can amicably agree on the Board's composition.[148] It is my sincere hope, however, that they can place their fiduciary duties to Jenzabar ahead of personal squabbles. A Delaware corporation should not be a pawn in its founders' divorce.

## III. CONCLUSION

Maginn's motion for summary judgment is granted. Mills and Harder's motion for summary judgment is also granted. The status quo order is hereby lifted.

---

[148] Harder can be removed once Chai and Maginn, as the Founder Designated Directors, mutually agree to appoint a successor under Sections 4.2(a)(iii) and 4.2(b) of the Stockholders Agreement. Harder was designated under Section 3.4 of the Bylaws by Mills, the sole remaining director designated by the Founder Designated Directors. Section 5.2 of the Bylaws governs the removal of "[a]ny director designated by the holders of the Senior Preferred Stock or any Founder Designated Director." Bylaws § 5.2. Harder is neither.